CITY OF SCOTTSBLUFF, APPELLEE, V. MAGGIE KENNEDY ET AL., APPELLANTS.

CITY OF SCOTTSBLUFF, APPELLEE, V. MATTIE FRANK ET AL., APPELLANTS.

CITY OF SCOTTSBLUFF, APPELLEE, V. MATTIE FRANK ET AL., APPELLANTS.

CITY OF SCOTTSBLUFF, APPELLEE, V. MARY C. CORNELL ET AL., APPELLANTS.

4 N. W. (2d) 878

FILED JULY 10, 1942.   Nos. 31310, 31311, 31312, 31313.

*Morrow & Miller*, for appellants.

*Floyd E. Wright, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

CARTER, J.

This is an appeal from four decrees entered in suits brought for the foreclosure of tax sale certificates on certain real estate in the city of Scottsbluff.

The record shows that the city of Scottsbluff commenced three suits for the foreclosure of tax sale certificates. Two appeals were taken from decrees entered on four causes of action in City of Scottsbluff v. William and Mattie Frank et al., an appeal from a decree entered on one cause of action in City of Scottsbluff v. Maggie Kennedy et al., and an appeal from a decree entered on two causes of action in City of Scottsbluff v. Mary C. Cornell et al. For the purposes of appeal all were briefed, argued and submitted together. It appearing that the appeal in City of Scottsbluff v. Maggie Kennedy et al., No. 31310, raises all questions involved in the other three cases, this opinion will be written on the facts of that case and as determinative of all questions raised in all the appeals hereinbefore enumerated.

The record shows that William and Mattie Frank were the owners of tax lot 17 in section 23, township 22 north, range 55 west of the sixth P. M. It is bounded on the south by Twentieth street, which constitutes a part of paving district No. 9 in Scottsbluff, and on the west by Fourth avenue, which constitutes a part of paving district No. 15 in said city. General taxes and special assessments in each of the paving districts were levied against tax lot No. 17, which for many years remained unpaid. On May 15, 1938, plaintiff city purchased the taxes due on this tract in the amount of $9,857.16, and received a tax sale certificate as evidence thereof. On June 12, 1940, taxes and assessments for 1937 and 1938 were paid by the city and indorsed on the tax sale certificate, so that there was due thereon on that date the sum of $12,143.94. This amount represented general taxes, special drainage taxes, paving assessments in district No. 9 and paving assessments in district No. 15. Defendants question the validity of these taxes and special assessments levied against tax lot No. 17, although as to all other properties involved in these appeals the validity of the general taxes is not an issue.

The general taxes assessed against tax lot No. 17 are claimed to be void for the reason that the description in the assessment books and tax lists was too indefinite and uncertain to identify the property. Prior to 1930 tax lot No. 17 was described as "Tax Lot 4 Pt $E^2$ $SE^4$; $SE^4$ $NE^4$ Sec. 23, Twp. 22, R. 55, Total Acres 5." We think that this description is plain and that it has but one meaning, to wit: Tax lot No. 4, part of the east half of the southeast quarter of the southeast quarter of the northeast quarter of section 23, township 22, range 55, containing five acres. Our statute, section 77-2036, Comp. St. 1929, provides: "Irregularities in making or equalizing assessments, or in making the returns thereof, shall not invalidate the sale of any real estate when sold by the county treasurer for delinquent taxes due thereon, nor in any manner invalidate the tax levied on any property or charged against any person." Section 77-2037, Comp. St. 1929, provides, in part, "and any irregularity, informality or omission in any such assessment book, tax collector's book, or other record of any real or personal property assessed for taxation, or upon which any tax is levied, or which may be sold for taxes, provided such description be sufficiently definite to enable the county treasurer or other officer, or any person interested, to determine what property is meant or intended by the description * * *." And in section 77-2042, Comp. St. 1929, we find the following: "It shall be sufficient in the petition and in all proceedings in such foreclosure suit, to designate the township, range, section, or part of section and also the number and description of any lot or block by initial letters, abbreviations and figures * * * ." We think that the claimed indefiniteness and uncertainty of the description can be nothing more at most than an irregularity in no way affecting the validity of the assessment, when considered with these provisions of the statutes.

Appellants contend that the description was fatally defective for the reason that there was no plat on record which described the property contained in tax lot 4. It is true that there is no evidence of the origin of this part of the de-

scription. It appears that, when petitioning for paving in paving district No. 9, the then owner described the land as tax lot 4 in section 23. It is evident, therefore, that owners of the property were not misled by the description used. Regardless of this point, the evidence shows that, during the times herein mentioned, tax lot No. 17 consisted of all of the east half of the southeast quarter of the southeast quarter of the northeast quarter of section 23, except the south 33 feet thereof which were a part of the street. The south 33 feet, being a part of the street, were not subject to taxation and, consequently, no difficulty would be experienced in determining that the part referred to in the description was all of the property described by the initial letters, abbreviations and figures, except that part used as a street. This conclusion is sustained in *Spiech v. Tierney*, 56 Neb. 514, 76 N. W. 1090, *Concordia Loan & Trust Co. v. Van Camp*, 2 Neb. (Unof.) 633, 89 N. W. 744, and *Kershaw v. Jansen*, 49 Neb. 467, 68 N. W. 616, cases very much in point. Under the holdings of these cases the description of the tract as a part of the recognized governmental subdivision, when the only part of the designated governmental subdivision not owned by defendants was the part used as a street, is a sufficient description to sustain the tax.

Appellants seek to avoid this conclusion by disproving that the south 33 feet are a part of the street. There is no evidence that this strip of ground was ever formally dedicated as such. It appears, however, that for 40 years it had been used as a road and that for 20 years it had been used as a full-width street. The street is now paved and is within the boundaries of paving districts Nos. 9 and 15. We think the use of the south 33 feet as a road for 40 years, its use as a street for 20 years, and the subsequent paving of the street without objection on the part of the owner imply a dedication by the owner of its use as a public street within the rule announced in *Burk v. Diers*, 102 Neb. 721, 169 N. W. 263, and *City of McCook v. Red Willow County*, 133 Neb. 380, 275 N. W. 396. The contention advanced that the south 33 feet constituted a private road and not a public street is without merit.

It is further contended that the addition of the words and figures "tax lot 17" to the description makes it indefinite and uncertain. While the description used prior to the addition of the words "tax lot 17" was sufficient to sustain the tax, the addition of this description tended to make it more certain. The record shows that the register of deeds has in his office an Irregular Tracts Book Record which was compiled by the county surveyor by authorization of the county commissioners. In this record is a plat showing tax lot 17 and a description of it as described in the government survey, less tax lot 17 B which is that part used as a street and is described therein by metes and bounds. We think this meets all requirements for describing irregular tracts as tax lots for convenience in the assessment of taxes as required by sections 26-701 to 26-703, inclusive, Comp. St. 1929.

The record also shows that after 1930 certain of the county records carried the description solely as tax lot 17 in section 23, township 22 north, range 55. For the reasons hereinbefore stated, this is a good and valid description of the property for taxation purposes.

Defendants also urge the invalidity of the special assessments levied by the paving districts. It is contended that tax lot 17 is unplatted and not subdivided and therefore not subject to special assessments for paving. Defendants ask the court to construe sections 16-614, 16-623 and 16-626, Comp. St. 1929, to mean that lots and subdivided real estate only are subject to the levy of special assessments for the payment of public improvements. Construing these sections together by considering the words "shall be assessed upon the lots and lands specially benefited thereby" in section 16-614, the words "shall have power and authority to levy and collect special taxes and assessments upon the lots and pieces of ground adjacent to or abutting upon the street" contained in section 16-623, and the language "the word 'land' shall mean any subdivided real estate" in section 16-626, lead us to the conclusion that an unplatted or nonsubdivided tract of land in a city may be subjected to assessment for special benefits. While it is true that a special

definition has been accorded to the word "land" by section 16-626, no attempt was made to define the expression "pieces of ground" contained in section 16-623. We are of the opinion that the legislature intended that irregular tracts within a city, such as tax lot 17, should be subject to assessment for special benefits. This court seems to have decided this point previously in the case of *Medland v. Linton*, 60 Neb. 249, 82 N. W. 866, wherein we said: "An unplatted tract of land within the limits of a city is subject to taxation for special benefits received to pay costs of local improvements, the same as though it were platted into lots and blocks."

Defendants contend that the assessments levied by the paving districts are void for the reason that the publication of certain notices required by law to be published do not appear by the minutes of the city clerk to have been so published. As to the assessment of benefits by paving district No. 9, it is pointed out that the ordinance creating the district and the ordinance fixing the benefits are not shown by the minutes of the city council to have been published. Neither does it appear from the minutes that notice of the organization of the district was given or that any notice of the equalization meeting was given or published. That all of these notices were actually given and published is proved in the record by proofs of publication and the testimony of a newspaperman familiar with the fact of publication. Defendants contend that such proof is not competent and that the only proof by which such facts may be established is the minute record of the city council. Such is not the law. To make the work of a city clerk in recording the minutes of a city council so technical and meticulous as to require the recording of events and acts extraneous to a council meeting and not specifically required by statute would subject bondholders, creditors and all persons interested in the affairs of the municipality to the carelessness and indifference ofttimes evidenced in the records of public officials. The presumption is, of course, that all requirements of statute have been complied with and, unless specifically required to be shown by the minutes, we think it is entirely proper to show

the fact by whatever competent proof of the fact that is available. We have examined the cases cited by the defendants and, while the rules of law stated therein are undoubtedly correct, they have no application here. Such cases deal with the minutes of a city council pertaining to the passage of ordinances. We have repeatedly held that the minutes of the city council must show that all acts of the council required by statute to effectuate the passage and adoption of a valid ordinance must be shown by the minutes to have been done by the council. But we know of no statute or rule of law that requires a proof of publication, a matter extraneous to the official acts of a city council, to be copied into, or noted in, the minute record. We think that any competent proof of the fact of the publication which the statute requires is admissible and that the evidence tendered by plaintiff met all requirements as to competency.

It is contended also that similar proofs of publication are not affirmatively shown by the minute record as to the organization of paving district No. 15 and the levy of special assessments within that district. Plaintiff offered in evidence a collection of documents in the nature of a history of the organization of paving district No. 15 and the levy of the special assessments herein contested, which were found among the records of the city council. Original proofs of publication of the notices, which defendants claim were not published, are attached thereto. We think, as we heretofore said, that this is competent proof of the publication of the notices and sufficient to empower the city council to act.

It is urged that the equalization meetings were not held as required by statute. It appears that the city council fixed the hour of the day that it would meet to equalize the benefits to be assessed in each of the two paving districts. The minutes of the city council show that such meetings were held on the designated days, but that the hour at which the transition from a city council to a board of equalization took place is not shown and, as a result, defendants contend that the meeting could have been held several hours before or after the hour designated. The presumption must be, in

the absence of proof to the contrary, that the meetings were held as noticed. There is no evidence in the record that the meetings were not so held. Defendants rely solely upon the proposition that the minutes must affirmatively show the hour of meeting. While we agree that a properly kept record should show the hour at which the board of equalization convened, yet in the absence of competent proof that it did not lawfully convene, the presumption of regularity is sufficient to sustain the action of the city council.

Defendants have cited cases supporting the rule that statutes purporting to authorize the levy of special assessments upon abutting property for street improvements must be strictly construed, not only with reference to the grant of power to levy the assessments, but also with reference to the procedure to be followed. In *Hutchinson v. City of Omaha,* 52 Neb. 345, 72 N. W. 218, it was said: "It is familiar law that in order to sustain an assessment of this character the record must show affirmatively a compliance with all the conditions essential to the valid exercise of the taxing power. *Smith v. City of Omaha,* 49 Neb. 883. It is no less familiar that statutes authorizing the exercise of such power are to be strictly construed. Expressing his individual opinion only, the writer will say that he believes that such grants of power hold out temptations and opportunities for the confiscation of property to such an extent that the protection of property rights demands that they should receive the very strictest construction, and that the courts should be insistent that the proceedings should be of the utmost regularity." With this rule we fully agree, but it is not helpful to the defendants in this case. Irrespective of the rule quoted, in a suit to foreclose a tax sale certificate, a legal presumption of the validity of the general taxes and special assessments included therein exists. The rule is stated in *Ure v. Reichenberg,* 63 Neb. 899, 89 N. W. 414, as follows: "In an action of foreclosure upon a tax sale certificate, and for prior and subsequent taxes and special assessments paid by the holder of the certificate, the certificate and receipts of the proper officer for prior and subsequent taxes and special assessments

are *prima facie* evidence of the validity of the taxes which they represent."

By this rule, the origin of which is statutory (Comp. St. 1929, sec. 77-2017), the legislature has relieved the holder of the tax sale certificate of the necessity, in the first instance, of proving that every requirement of statute had been followed to prove that the property was subject to the lien of his certificate. Any claim that the tax or assessment was void or unenforceable must be pleaded and evidence adduced thereon before the holder of the certificate is required to prove the validity of his lien in respect to the matters contained in the attack made upon it. A failure to produce evidence that a pleaded requirement to the validity of the assessment or tax had not been met is not sufficient. There must be affirmative evidence to sustain the invalidity of the tax or assessment in the respects pleaded in the answer. To a large extent, the defendants in the present case rely upon a silent record to sustain their claim that the lien of the tax sale certificate is unenforceable because of a failure of statutory compliance. This they cannot do. The presumption of validity proclaimed by our statute is a sufficient answer to all such attacks upon the enforceability of plaintiff's certificate.

It appears that the paving assessment in paving district No. 9 was levied only on the south 150 feet of tax lot 17, but was included in the tax sale certificate to the whole of tax lot 17. The trial court correctly held the tax sale certificate void and decreed a foreclosure of the tax lien to which plaintiff, by subrogation, was entitled. *Adams v. Osgood,* 42 Neb. 450, 60 N. W. 869; *John v. Connell,* 61 Neb. 267, 85 N. W. 82. The court in its decree ascertained the amount of taxes due on the south 150 feet of tax lot No. 17 and the amount due on the remaining portion of the tract, and ordered separate sales. It being a foreclosure of the tax lien rather than the tax sale certificate, an attorney's fee was denied and a redemption period of two years allowed after the sale. This was a correct determination of these questions.

We conclude that all taxes and special assessments are

valid and that the decrees entered by the trial court in all four appeals hereinbefore enumerated are in all respects correct.

AFFIRMED.