SCOTTS BLUFF COUNTY, APPELLEE, V. OWEN A. FRANK ET AL., APPELLANTS.

7 N. W. (2d) 625

FILED JANUARY 15, 1943. No. 31492.

*Morrow & Miller*, for appellants.

*Jack L. Raymond* and *Frank Glebe*, *contra*.

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

SIMMONS, C. J.

The question presented here is whether or not the description on the assessment records and tax lists is sufficient to sustain the tax sale certificate and to identify the property against which plaintiff proceeds. The trial court held that it was. Defendants appeal. We affirm the judgment.

The question arises out of the following situation. On March 30, 1894, United States patent was issued to Lorenzo S. DeMott for the northwest quarter (NW¼) of section 24, township 22, range 55. The Winter Creek canal went generally across the northeast corner of the quarter-section, dividing it so that some 8.41 acres were above and 150.4 acres were below the canal. Title to that part of the quarter-section below the canal passed to Clifton R. DeMott. He, on May 31, 1906, conveyed an undivided one-half interest in it to William Frank. On February 23, 1916, DeMott conveyed the other one-half interest to William Frank. On February 23, 1925, William Frank conveyed it to Owen Frank, who thereafter continued to own all of it, except three parcels totaling 18.88 acres which were conveyed by him to other parties in 1938 and 1939.

The question presented arises because the officials, for some years, carried the ownership of the land below the canal under two names, equal acreage, and unequal values, when in fact the land was owned entirely by one party, and the entire acreage so owned was liable to assessment and taxation as one unit under the name of one owner.

The assessment record for the years 1919 to 1929 carried the assessments on the quarter-section substantially as illustrated by the 1920 record as follows:

| Name of Owner | Description Pt. of Sec. | Sec. | Twp. | R. | Total Acres | Assessed Value |
|---|---|---|---|---|---|---|
| DeMott, L. S. | Pt. NW¼ | 24 | 22 | 55 | 75.2 | 1960 |
| Frank, William | Pt. NW¼ | 24 | 22 | 55 | 75.2 | 3061 |
| Shiels, Thomas | Pt. NW¼ | 24 | 22 | 55 | 8 2/5 | 272 |

The description and acreage remained constant through the years. The value of each tract was different for each year and different as to each tract each year. An interlineation was made on the assessment record for 1925 changing the name William to "Owen" and thereafter a similar entry was carried as "Owen Frank" owner "Pt. N. W. ¼." Also the name L. S. DeMott was lined out on the assessment records for 1926 to 1929 and "Owen Frank" written in. When these interlineations were made is not material to our determination here.

From 1930 to 1932 the assessment records listed in duplicate entries Owen Frank "Pt. N. W. ¼," etc., "75.2" acres followed by a bracket with a single valuation for the two entries. Beginning with 1933 the assessment record lists Owen Frank "Pt. N. W. ¼," etc., 150.4 acres. The tax lists for those years were made up as to name of owner and description substantially the same as the assessment records.

The record shows that Owen Frank paid, at separate times, the taxes for 1927 and 1928 and that separate treasurer's receipts were issued. The taxes on the three parcels sold in 1938 and 1939 were segregated and paid.

In 1937 notice of tax sale was made wherein this land was described as "Pt. N. W. ¼, 24-22-55." The county treasurer issued a certificate of tax sale wherein this land was described as "Pt. N. W. ¼, Sec. 24, Twp. 22, Range 55, acres 150.4."

The plaintiff brought this action alleging the levying of the taxes against "All that part of the Northwest Quarter of Section 24, Township 22 North, Range 55 West of the Sixth Principal Meridian lying south of the Winter Creek Canal;" that it had purchased the real estate from the county treasurer at private sale, had been issued tax sale certifi-

cate therefor; the accrual of subsequent taxes; that the county was the owner of all the tax liens. Plaintiff prayed for an accounting of the amount due upon the tax sale certificate and for subsequent taxes and for foreclosure on that part of the land included in the above description less the three tracts sold.

Defendants answered admitting ownership of the land described in the petition, and deny generally as to allegations material here. By way of cross-petition defendants plead, among others, the facts herein recited, alleged that it is impossible to ascertain the land from the description contained in the assessment records and tax lists, that they are so indefinite and uncertain as to be meaningless and absolutely void and that the tax sale certificate is void; that claim of the plaintiff that the purported descriptions covered defendants' land cast a cloud upon defendants' title. Defendants pray that the petition be dismissed, that the alleged assessments, taxes, and certificate be declared void, and that their title be quieted as against the same and as against claims of the plaintiff.

The trial court found for the plaintiff and entered decree for the amount found due, together with attorney's fees and costs.

Defendants here contend that the description appearing upon the assessment rolls and tax lists for the years 1919 to 1929, inclusive, was not sufficient to identify the property described in the petition or any part thereof, and that the taxes alleged to have been assessed against the property for those years are void. They further contend that the validity of the assessments of the property for 1930, 1931 and 1932 "in two unidentifiable parts of 75.2 acres each connected by a bracket with a single valuation * * * is at least debatable."

Section 77-2034. Comp. St. 1929, provides: "No sale of real property for taxes shall be void or voidable on account of the same having been assessed in any other name than that of the rightful owner, if the property be in other respects sufficiently described." See *Grant v. Bartholomew,*

57 Neb. 673, 78 N. W. 314, and *Carman v. Harris*, 61 Neb. 635, 85 N. W. 848. So here the fact that the property was assessed in part in the name of DeMott does not render the sale void or voidable "if the property be in other respects sufficiently described." In the light of the statute the description of the property in the various assessment records and tax lists must be considered as though at all times the name Frank had been used where DeMott was used. Was the property sufficiently described?

Defendants in their brief state it "is therefore reasonable to suppose that the description opposite the name Thomas Shiels was intended to describe the land in said quarter-section above said canal," and that "the purported descriptions set opposite the names L. S. DeMott and William Frank referred to land below said canal."

It is stipulated that for the years mentioned these assessments are all that were made against land in the quarter-section involved. It will not be assumed that the assessor intended to omit any of the land from assessment. It is clear then that the assessor intended that "Pt. N. W. $\frac{1}{4}$" assessed following the name of Mr. Shiels relates to the land above the canal, and not involved here. It is also clear that he intended that "Pt. N. W. $\frac{1}{4}$" assessed following the name DeMott and "Pt. N. W. $\frac{1}{4}$" following the name Frank should together constitute the balance of the quarter-section.

The description is not void because of the use of initials, letters or abbreviations in describing the land. *City of Scottsbluff v. Kennedy*, 141 Neb. 728, 4 N. W. (2d) 878.

Defendants argue that the land was not sufficiently described because there is no way that any one can segregate that part assessed following the name of Frank from that part assessed following the name DeMott; that there are no defined boundaries; and no data by which either tract may be located.

The fallacy of defendants' argument lies in the fact that to sustain it they must rely on an ownership of part of this land by DeMott, and an inability to separate DeMott's in-

terest from Frank's; where in fact DeMott had no interest in the land and there were no different interests to segregate, as there was at all times here involved but one interest.

This is a matter of simple arithmetic. If the two "Pt. N. W. ¼"'s are added together the total of the land below the canal owned by Frank is described. If 75.2 acres and 75.2 acres are added together the total of that acreage is shown. If the two assessed values are added together the total assessed valuation is had and if the two tax items are added together the total tax is determined.

Are these taxes void because of the fact that this addition was not actually done on the assessment records and tax lists, or was not done before those lists were made up and because of the fact that the totals were not used? We do not think so.

Section 77-2036, Comp. St. 1929, provides: "Irregularities in making or equalizing assessments, or in making the returns thereof, shall not invalidate the sale of any real estate when sold by the county treasurer for delinquent taxes due thereon, nor in any manner invalidate the tax levied on any property or charged against any person." The legislature did not leave it to the courts to determine what it meant by "irregularities" in the above section. It provided in section 77-2037, Comp. St. 1929: "The following defects, omissions and circumstances occurring in the assessment of any property for taxation, or in the levy of taxes, or elsewhere in the course of the proceedings from and including the assessment and to and including the execution and delivery of the deed of the property sold for taxes, shall be taken and deemed to be mere irregularities within the meaning of the preceding section, * * * any irregularity, informality or omission in any such assessment book, tax collector's book, or other record of any real or personal property assessed for taxation, or upon which any tax is levied, or which may be sold for taxes, provided such description be sufficiently definite to enable the county treasurer or other officer, or any person interested, to determine

what property is meant or intended by the description, and in such case a defective or indefinite description on the assessment or treasurer's book, or in any notice or advertisement may be made definite by the treasurer in the deed by which he may convey such property, if sold for taxes, by conveying by proper and definite description the property so defectively or indefinitely described."

The applicable test here established is: Was the description "sufficiently definite to enable the county treasurer or other officer, or any person interested, to determine what property is meant or intended by the description?" The tests are listed by the use of the disjunctive "or." But without regard to that the test is answered affirmatively by the fact that both the county treasurer *and* the person most interested, to wit, the owner, Owen Frank, were, when he paid the taxes for 1927 and 1928, both able to determine the property meant *and* intended by the description. We do not think that it may be held that Mr. Frank paid those taxes on two separate years without being able to and without having determined, from the records here assailed, that they were properly assessed against his property by proper and adequate description, so meant and so intended.

The case of *Spiech v. Tierney*, 56 Neb. 514, 76 N. W. 1090, supports this conclusion. There lots 6 and 7 were originally all owned by the Tierneys. The south 80 feet of the lots were conveyed to a railroad company. Thereafter the lots were listed under the description "parts of lots 6 and 7." It was contended that the tax was void "because it cannot be determined with certainty which part of the lots were assessed and taxed." There it was pointed out that the parts of lots 6 and 7 remaining, after the conveyance, were the only parts that, as to the Tierneys, were to be entered on the assessment rolls and valued for taxation. The Tierneys owned those remaining parts. It was held that "the public records afforded, at all times, pretty conclusive evidence of the identity of the land against which the efforts of the taxing authorities were directed." So here the public records show that the efforts of the taxing

authorities were directed against the land, and all of the land, lying south of the canal and owned exclusively by Mr. Frank. No other land was included, and no land owned by the Franks in that quarter-section was excluded. The payment of the tax for two years also establishes that Mr. Frank was not "misled" by the description. We have recently said: "A description of real estate is sufficient to sustain a tax if it does not mislead, and identifies or designates with reasonable certainty the property intended to be taxed." *City of Scottsbluff v. Kennedy, supra.* Defendants, however, contend that a succeeding part of the decision is applicable. It was also shown that the Tierneys owned all of lot 5 and it was all subject to taxation. The assessment was carried under the description of "Part of Lot 5." It was held that the tax was void, because it could not be determined which part of the property was charged with the tax. But here all of the property below the canal was owned by Mr. Frank, no part of it was omitted from the description, all of it was subject to taxation and all of it was taxed. See, also, *Concordia Loan & Trust Co. v. Van Camp,* 2 Neb. (Unof.) 633, 89 N. W. 744.

Decisions from other jurisdictions are not persuasive as against clearly expressed legislation to the effect that irregularities of this kind shall not be used by an owner as an implement with which he may lift the tax burdens from his property and thereby escape payment of its determined share of the expenses of government.

This conclusion as to the 1919 to 1929 taxes disposes also of the contention with reference to the subsequent taxes. The decree of the trial court is

AFFIRMED.