COUNTY OF YORK, NEBRASKA, A POLITICAL SUBDIVISION,
APPELLEE, V. LLOYD TRACY, DOING BUSINESS AS
TRACY ENTERPRISES, APPELLANT.

558 N.W.2d 815

Filed December 31, 1996.    No. A-95-790.

Earl D. Ahlschwede, of Mayer, Burns & Ahlschwede, for appellant.

Charles W. Campbell, York County Attorney, for appellee.

MILLER-LERMAN, Chief Judge, and HANNON and MUES, Judges.

HANNON, Judge.

York County brought this action to enjoin Lloyd Tracy from operating his refuse disposal and recycling business on certain land located in York County. The county sought this relief on the ground that Tracy was operating his business in violation of its zoning regulation and because, as operated, the business constituted a public nuisance. The district court granted the injunction, and Tracy appeals, arguing that the zoning regulation was invalid and that his business does not constitute a public nuisance. We conclude that the York County Board of Commissioners did not hold a public hearing as required by the statute which authorized the zoning regulation and therefore that the regulation was invalid; we also conclude that Tracy's activity did not constitute a public nuisance. Therefore, we reverse with directions to dismiss the action.

## FACTUAL BACKGROUND

Tracy's real estate is a tract of approximately 6.9 acres located roughly 4½ miles west of York, Nebraska, on Highway 34. A building is located in approximately the middle of the tract. Under the zoning regulation passed in 1974, this property is zoned "General Agriculture." This regulation was adopted by a resolution of the York County Board of Commissioners. It is a comprehensive regulation of zoning in York County and is comparable to comprehensive zoning ordinances passed by cities. For ease of expression, we will call Tracy's real estate the "tract," the plaintiff will be referred to as the "County," and the defendant will be referred to as "Tracy." Unless clarity otherwise requires, we will not separately identify the various governmental agencies or officers as officials of York County.

On July 3, 1991, Victor Johnson, Tracy's predecessor in title to the tract, requested a special exception to the zoning regulation which would allow the tract to be used for truck repair and storage. The County granted this special exception, but placed conditions on the storage of material. Johnson then sold the tract to Tracy.

On June 22, 1992, Gary Charlton, county zoning administrator, sent Tracy a letter informing him that he was violating the zoning regulation as well as the special exception granted on

the tract. On November 3, Tracy applied for a special exception for the purposes of "a Garbage Hauling, Transferring, Recycling of garbage and trash business." On November 23, the County granted Tracy's special exception, but again placed conditions on the special exception. As the conditions on the special exception have no bearing on this opinion, we will not describe them. The County sent Tracy a letter, dated July 6, 1993, which advised Tracy that he was not complying with the November 1992 special exception. The County later brought this action to enjoin Tracy from operating his business in violation of the zoning regulation and in violation of the special exceptions granted on the tract.

## PLEADING

In its operative petition, the County alleges, in substance, that since December 9, 1991, Tracy has owned the tract, upon which he has operated a garbage hauling and refuse business since July 22, 1992. In its first cause of action (referred to as a "theory of recovery"), the County seeks an injunction which would prohibit Tracy from operating his business. The County alleges that Tracy's business violates the zoning regulation as well as the special exceptions mentioned above. The County alleges that Tracy's tract is zoned "General Agriculture" and that his business cannot operate upon land that is located in a district which is zoned "General Agriculture." Tracy does not claim the regulation would allow him to operate his business in its present location without the special exceptions that were granted. Therefore, we will not set forth the specific terms of the "General Agriculture" classification.

In its second "theory of recovery," the County seeks to have Tracy's operation enjoined on the basis that the operation is a public nuisance because of improperly stored refuse, trash, and garbage on the tract which has blown or washed onto adjoining land, because the operation poses a health and environmental hazard, and because it depreciates the value of neighboring land and constitutes a public nuisance. The County maintains it is entitled to a permanent injunction to abate the nuisance and prohibit Tracy from operating his business on the tract.

In its third "theory of recovery," the County alleges Tracy installed I-beams in a certain place on the tract, that the I-beams are the beginning of a building, that Tracy did not obtain a building permit as required by the applicable zoning regulation, and that he has allowed the I-beams to remain upon the land. The County requested that the court prohibit further construction and that Tracy be ordered to remove the existing partial construction. The parties litigated this issue in the trial below, and in its decree, the trial court made certain findings in regard to the I-beams. In this appeal, Tracy assigns these findings as error. However, the trial court ordered Tracy only to cease his business operation on the land; it did not specifically order Tracy to remove the I-beams or any alleged partial building. The County did not cross-appeal from the trial court's failure to grant it any relief concerning the I-beams or the partially constructed building. The trial court's findings that Tracy started construction of a building without a building permit might well justify an order to remove that construction, but such findings without an order do not require Tracy to remove the building. As a result, the trial court's findings are clearly immaterial and moot. We have concluded the entire third "theory of recovery" is moot, and we do not discuss the issues concerning it further.

In his answer, Tracy admits he owns the tract, that he operates a garbage hauling and refuse business upon it, and that he applied for the exception and modification under the regulation. He alleges the zoning regulation upon which the County relies was not properly adopted, that it is void, and therefore that he is not operating his business under the special exception granted to him because the zoning regulation is void. He also denies all allegations which support the County's claim that he has violated the special exceptions or that his business operation is a public nuisance.

After a trial, the district judge found that the zoning regulation was validly enacted; that Tracy applied for a special exception to it and for an amendment and modification of that exception; that he failed to comply with the conditions imposed under the special exception; that his failure to properly deposit, store, and maintain garbage, refuse, debris, and other items posed a health hazard and a threat to the environment; and that the

premises constitute a public nuisance. The court granted a permanent injunction, effective July 1, 1995, which prohibited Tracy from operating a garbage hauling, transferring, and recycling business on the tract.

## ASSIGNMENTS OF ERROR

Tracy alleges the district court erred (1) in not finding he met the burden of proof in showing the 1974 zoning regulation was invalid, (2) in allowing the County to proceed with the public nuisance action, and (3) in determining Tracy's use of the tract constituted a public nuisance.

## STANDARD OF REVIEW

With regard to questions of law, an appellate court is obligated to reach conclusions independent of the decision reached by the trial court. *Village of Brady v. Melcher*, 243 Neb. 728, 502 N.W.2d 458 (1993).

An action for an injunction sounds in equity. *Id.* In an equity action, an appellate court reviews the record de novo. *Id.* In an appeal of an equity action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court. *Id.*

## ANALYSIS

Obviously, Tracy's business is a lawful one, and it may not be enjoined unless it is unlawful because it violates the County's zoning regulation or because it is a nuisance. The threshold question is the validity of the County's zoning regulation.

### Is Zoning Regulation Valid?

The parties agree that the County adopted a zoning resolution containing the regulation on February 26, 1974. On the record presented, this regulation is the only zoning regulation which could prohibit Tracy's present use of the premises. Tracy maintains this regulation was not lawfully adopted because proper statutory procedures were not followed. Specifically, Tracy contends the minutes of the York County Board of Commissioners (County Board) do not show that a public hearing concerning the zoning regulation was advertised or held.

We start by recognizing that a zoning ordinance or regulation will be presumed valid in the absence of clear and satisfactory evidence to the contrary. *Gas 'N Shop v. City of Kearney*, 248 Neb. 747, 539 N.W.2d 423 (1995). See, also, *Giger v. City of Omaha*, 232 Neb. 676, 442 N.W.2d 182 (1989). The party challenging the validity of a zoning ordinance or regulation has the burden of proving it is invalid. See *Jamson v. City of Grand Island*, 180 Neb. 438, 143 N.W.2d 877 (1966). In this case, the issue is whether Tracy met his burden of proving the zoning regulation was invalid.

In 1974, the statute authorizing county zoning provided in significant part:

*Provided*, no such regulation, restriction or boundary shall become effective until after a public hearing in relation thereto, when its parties in interest and citizens shall have an opportunity to be heard. Notice of the time and place of such hearing shall be given by the publication thereof in a legal newspaper of general circulation in such county one time at least ten days prior to such hearing.

Neb. Rev. Stat. § 23-164 (Reissue 1974).

Tracy's attorney called the county clerk as a witness to establish a foundation for the minutes of the County Board from October 23, 1973, through February 26, 1974. These minutes consist of pages numbered consecutively. The clerk testified these minutes contain all of the minutes of the County Board between October 23, 1973, and February 26, 1974, inclusive, and that there are no other minutes of any hearing on zoning. The clerk's testimony established the basis for the introduction of an index setting "forth different hearings that were held by the York County Board." The clerk testified that she had been subpoenaed to bring with her an affidavit of publication of a notice of hearing for the adoption of the zoning regulation in question. The clerk testified she searched for the affidavit, and she stated, "We didn't have any on record."

The February 26, 1974, minutes are either silent or minimal on certain points, and the effect of the lack of information on these points has a great bearing on our decision concerning the validity of the zoning regulation. The minutes of February 26 state: "The agenda of the meeting was poste[d] on the bulletin

board in the County Clerk's office." With regard to the zoning regulation, they state: "John Brogan, Allen Barney and Harry Hecht, met with the Board in regard to the adopting of the York County Zoning Regulation Resolution." They further state: "Moved by Bergen, seconded by Roberts, that the following Resolution be adopted."

The minutes also contain the "York County Zoning Regulation" in full. The regulation's preamble states:

> WHEREAS the Planning Commission has made a preliminary report and *held public meetings* thereon, and submitted its final report to the County Commissioners, and
>
> WHEREAS the County Commissioners have given due *public notice* of hearings relating to zoning districts, regulations, and restrictions, and ha[ve] held such *public hearings*, and
>
> WHEREAS all requirements of Chapter 23, Laws of Nebraska, with regard to the preparation of the report of the Planning Commission and subsequent action of the County Commissioners have been met . . . .

(Emphasis supplied.)

The adopting clause is followed by the statement: "Roll call for the foregoing Resolution as follows: yeas, 4; nays, Watson; motion carried." The record also contains minutes concerning other business before the board that is not relevant to our inquiry.

The other minutes in evidence cover 18 meetings held from October 22, 1973, to February 26, 1974, not inclusive, and they contain only three references to zoning. An entry made on October 30, 1973, states:

> Claude Walkup, met with the Board in regard to the Comprehensive Plan submitted to the County Board by the York County Planning Commission.
>
> Moved by Whitemore, seconded by Watson, that the York County Board of Commissioners accept the York County Comprehensive Plan for rural zoning 1972-1990 which was submitted to the county board at a *public hearing held October 24, 1973*; roll call: yeas, 5; nays, none; motion carried.

(Emphasis supplied.) The minutes of January 29, 1974, contain the note: "Allen Barney and John Brogan of the County Planning Commission met with the Board in regard to the final approval to the zoning plan. The Board must establish administrative procedures for the enforcement of regulations . . . . The Board agreed to have these details resolved by February 12." An entry in the February 12 minutes states: "John R. Brogan, Secretary for the Planning and Zoning Committee met with the Board and presented each member with a York County Zoning Regulation Resolution." No action concerning zoning matters is documented in the minutes of a meeting held on February 19, and the minutes of the next meeting, that of February 26, have been summarized above.

The minutes of all but one meeting start with a note that the meeting is "as per notice in the York Daily News Times." The minutes show that the clerk was directed on several occasions to advertise public hearings, but the minutes never direct the clerk to advertise any hearing on zoning.

Section 23-164, the statute which grants county boards the authority to adopt zoning regulations, at the relevant time provided, "The county board shall provide for the manner in which such regulations and restrictions . . . shall be . . . enforced . . . ." In this case, the minutes show that on January 29, 1974, the Board was told it must "establish administrative procedures for the enforcement of regulations [and] provide a procedure for applications and variances" and that the Board agreed to "have these details resolved by February 12."

Additionally, on October 30, 1973, the minutes state, "Moved by Whitemore, seconded by Watson, that the York County Board of Commissioners accept the York County Comprehensive Plan for rural zoning 1972-1990 which was submitted to the county board at a public hearing held October 24, 1973 . . . ." There are no minutes in the record from any public hearing or meeting held on October 24, 1973. If there was a public hearing held October 24, the regulation would not have been complete at that time, at least with regard to the manner of enforcement. Other than this reference, the minutes do not record a public hearing occurring October 24. The minutes in evidence show the regulation was not officially presented to the

board until February 12, 1974, and after that date, the minutes do not show the board set or held any public hearing.

■ The county clerk has the duty under statute to maintain the minutes of the county board. Neb. Rev. Stat. § 23-1301 (Reissue 1974) provides in pertinent part, "The county clerk shall . . . keep the seal, records and papers of said board . . . ." Neb. Rev. Stat. § 23-1302 (Reissue 1995) provides in pertinent part, "It shall be the general duty of the county clerk: (1) To record in a book for that purpose all proceedings of the board." The county clerk's records in evidence fail to show a record of any public hearing for the zoning regulation upon which the County relies. These records also fail to establish the public was notified of the terms of the zoning regulation or the territory to be zoned.

■ With regard to the absence of facts from an official record, the general notion is the following:

> At common law, records and reports of public officers made in the course of the discharge of their official duties are admissible not only as proof of the facts stated in them, but also to show the absence of entries that in the usual course should appear therein, and to prove, by reason of the absence of any entry, that an event did not take place or that something was not done.

29A Am. Jur. 2d *Evidence* § 1375 at 767-68 (1994).

Neb. Rev. Stat. § 27-803 (Reissue 1995) provides in significant part as follows:

> Subject to the provisions of section 27-403, the following are not excluded by the hearsay rule, even though the declarant is available as a witness:
> . . . .
> (9) *To prove* the absence of a record, report, statement, or data compilation, in any form, or *the nonoccurrence* or nonexistence *of a matter of which a record*, report, statement, or data compilation, in any form, *was regularly made and preserved by a public office or agency*, evidence in the form of a certification in accordance with section 27-902, or testimony, that diligent search failed to disclose the record, report, statement, or data compilation or entry.

(Emphasis supplied.)

The evidence of the minutes of the meeting of the County Board as summarized above discloses no public hearing was held. The statute summarized above also discloses that the county clerk had the duty to take and to preserve the minutes of any public meeting which was held by the County Board. The county clerk's testimony clearly establishes that she does not have such a record, and therefore this is strong evidence that no public hearing was held by the County Board as required by § 23-164. A review of Nebraska case law considering similar matters reinforces this conclusion.

*City of Scottsbluff v. Kennedy*, 141 Neb. 728, 4 N.W.2d 878 (1942), discusses the effect of the lack of minutes of a public meeting. In that case, the validity of a special assessment was contested. The minutes did not contain a record of the publication of certain required notices. Both the proof of publication and the testimony of the newspaper employee familiar with the facts proved that notice was actually given. The defendant, however, maintained such proof was not competent. The *Kennedy* court rejected this argument, but in so doing discussed cases concerning city council minutes regarding ordinances. The *Kennedy* court stated:

> We have repeatedly held that the minutes of the city council must show that all acts of the council required by statute to effectuate the passage and adoption of a valid ordinance . . . have been done by the council. But we know of no statute or rule of law that requires a proof of publication, a matter extraneous to the official acts of a city council, to be copied into, or noted in, the minute record. We think that any competent proof of the fact of the publication which the statute requires is admissible . . . .

*Id.* at 735, 4 N.W.2d at 882. We conclude that the same principle applies to the adoption of valid zoning regulations by the County. The above-quoted statutes clearly require that a record be kept of such meetings.

In *John v. Connell*, 64 Neb. 233, 89 N.W. 806 (1902), the minutes reflected that the board of equalization recessed after a brief meeting, but the minutes did not show the board ever reconvened or adjourned, although a statute required the board to meet from 9 a.m. to 5 p.m. The only other evidence presented

was the testimony of an individual that the board recessed before noon. The absence of minutes evidencing that the board reconvened and otherwise met from 9 a.m. to 5 p.m., as required by statute, was the basis of the Nebraska Supreme Court's holding that the board acted without jurisdiction.

The Supreme Court has said, "where the law requires that a record of proceedings be kept, but does not prescribe what such record shall contain, the omission from the record of such items not specifically required to be recorded is not a fatal defect." *School District No. 49 v. School District No. 65-R*, 159 Neb. 262, 270, 66 N.W.2d 561, 567 (1954). Secondary evidence may prove the passage and existence of an ordinance or regulation. See *Clough v. North Central Gas Co.*, 150 Neb. 418, 34 N.W.2d 862 (1948) (holding that if public body merely failed to record event that did, in fact, occur, then secondary evidence can be used to establish event occurred). Based upon the above cases, we conclude that when the law requires that a certain event be recorded by a public body, the absence of such a record in the records of that body is evidence that the event which should have been recorded did not occur, and absent secondary evidence that the event did occur, the absence of a record is clear and convincing evidence that the event did not occur.

In *Board of Commissioners v. McNally*, 168 Neb. 23, 95 N.W.2d 153 (1959), the Supreme Court found zoning regulations to be invalid because inadequate notice of the public hearing was given and because adequate description of the real estate affected was not published either by description or by adequate reference to a map. The *McNally* court held notice was necessary and should have been given in the statutorily prescribed manner. The *McNally* court stated that " ' "[notice] is not a technical requirement difficult of performance." ' " *Id.* at 33, 95 N.W.2d at 159.

In the case at hand, the minutes from February 26, 1974, state notice was given in the York Daily News Times, although the specific date of notice in the Times was not documented. In *McNally*, the Nebraska Supreme Court found the zoning regulations to be invalid because the evidence showed that the zoning areas were not clearly described and published as the law required. In so doing, it stated: "A zoning resolution is in dero-

gation of the rights of an owner under the common law and it follows that the procedure prescribed by the Legislature in the exercise of the police power is strictly construed and must be rigidly followed." *Id.* at 35, 95 N.W.2d at 160. In *McNally*, the public was at least given notice of the zoning hearing, whereas the record before us fails to show a public hearing. The evidence in this case shows the public may well not even have been aware that the zoning regulation was adopted.

It is true that the preamble contained sketchy findings to the effect that the law was followed, but the record does not bear out such findings. We can find no authority that the findings of a public body in a preamble of an ordinance or regulation that the law has been followed establish the validity of the public body's action. It should require no authority to support the proposition that findings in a preamble that "due public notice" was given, that "public hearings" were held, or that "all requirements of Chapter 23 . . . have been met" would not be effective when records show no such action was taken. In this case, the records of the county clerk do not show that a notice of the time and place of the hearing was published in a legal newspaper of general circulation in the county at least 10 days prior to such hearing as required by § 23-164.

Section 23-1301 provides, "The county clerk . . . shall attend the sessions of the county board; shall keep the seal, records and papers of said board; and shall sign the record of the proceedings of the board, and attest the same with the county seal . . . ." Section 23-1302(1) requires the clerk to record all proceedings of the county board. These statutes still require the county clerk to perform these duties.

▪ Upon cross-examination by the County, the county clerk testified that she is familiar with the regulations the State has adopted pursuant to the Records Management Act. She stated that under that act, county clerks are required to keep records of agendas of meetings and of publications of public hearings for only 2 years. She also testified that it was not unusual for the York County clerk's office to no longer have proofs of publication or meeting agendas after 10 years or longer, since the office tries to keep "our cage cleaned." She was under the impression she was not required to keep such records. The

county clerk's duty to keep records for the County Board is a matter controlled by statute, and the clerk's opinion on such matters is immaterial.

The absence of any evidence of the notice of a public hearing before the County Board is also convincing evidence that no public hearing was held. To anyone remotely familiar with the routine newspapers use to preserve their publications, the County's failure to produce a copy of the published notice of the required hearing makes a finding that no public hearing was held almost a certainty. If a hearing was held without published notice, then that hearing would hardly be a public hearing. Therefore, we must find the zoning regulation in question to be invalid because the required public hearing was not held. We make this finding based on the clear and convincing evidence that the minutes do not show that a public hearing was held or that notice of a public hearing was given as required by § 23-164, and there is no secondary evidence to otherwise establish these facts.

*Is Tracy Estopped From Attacking Regulation's Validity?*

The County argues that Tracy is estopped from attacking the zoning regulation because he relied upon its validity when he applied for special exceptions to it. The application of the estoppel doctrine was specifically rejected in *Board of Commissioners v. McNally*, 168 Neb. 23, 36, 95 N.W.2d 153, 161 (1959), when, in answer to a similar argument, the court said: "The conclusive answer to the challenge of the right of appellant to assert the invalidity of the alleged zoning regulations is that they were invalid from the time of their origin. Invalid legislation is not law. It confers no rights and imposes no duties or obligations." We note that the zoning regulation in *McNally* was adopted 17 years before that action, and that relatively long period was not found to breathe life into a void regulation. We find no basis for a different holding in this case because the zoning regulation was adopted approximately 20 years before this action was commenced.

*Is Tracy's Business a Public Nuisance?*

In the County's second cause of action against Tracy, the County alleges the current operation of Tracy's business consti-

tutes a public nuisance. The Supreme Court stated by way of a quote from the Restatement (Second) of Torts § 821B (1979) that a public nuisance is " 'an unreasonable interference with a right common to the general public.' " *State ex rel. Spire v. Strawberries, Inc.*, 239 Neb. 1, 9, 473 N.W.2d 428, 435 (1991). At the same time, the court stated: "[P]ublic nuisance 'comprehends a miscellaneous and diversified group of minor criminal offenses, based on some interference with the interests of the community [and] includes interferences with . . . public morals.' " *Id.*, quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 90 (5th ed. 1984).

The Restatement, *supra* at 87, cited favorably in *State ex rel. Spire, supra*, goes on to state:

(2) Circumstances that may sustain a holding that an interference with a public right is unreasonable include the following:

(a) Whether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, or

(b) whether the conduct is proscribed by a statute, ordinance or administrative regulation, or

(c) whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right.

To further explain what constitutes interference with a public right, the Restatement, *supra*, comment *g.* at 92, states:

Conduct does not become a public nuisance merely because it interferes with the use and enjoyment of land by a large number of persons. There must be some interference with a public right. A public right is one common to all members of the general public. It is collective in nature and not like the individual right that everyone has not to be assaulted or defamed or defrauded or negligently injured. Thus the pollution of a stream that merely deprives fifty or a hundred lower riparian owners of the use of the water for purposes connected with their land does not for that reason alone become a public nuisance. If, however, the pollution prevents the use of a public bathing beach or kills

the fish in a navigable stream and so deprives all members of the community of the right to fish, it becomes a public nuisance.

The question before us is whether Tracy's operation of his refuse and recycling business constitutes a public nuisance and not whether it constitutes a private nuisance to several persons.

In an apparent effort to show a public nuisance, the County called as a witness an adjoining landowner who testified that material from Tracy's property had blown onto his property on several occasions, that material had washed onto his property and still remained there, and that his fence was damaged from material on Tracy's property. The neighbor also testified he had concerns about water draining from Tracy's property onto his property, possibly contaminating ground water. A previous and the current York County zoning administrator both testified the County received several complaints about the manner in which Tracy was operating his business on the property. This evidence does not establish a public nuisance under the definition of "public nuisance" quoted above.

In determining whether Tracy's business operation constitutes a public nuisance, we find no evidence in the record which causes us to conclude that the operation of Tracy's business rises to the level of public nuisance. While material blowing onto a neighbor's property might create a cause of action for a private nuisance, this question is not before us. The neighbor also testified he had concerns about the ground water. The neighbor's concerns are not evidence or proof that Tracy's business operation has contaminated the ground water. Furthermore, the County offered no evidence or proof that the ground water was in any way contaminated. Rodney DeBuhr, the water department manager for the Upper Big Blue Natural Resources District, testified that the only pollution in a nearby recharge lake was from pesticide as a result of runoff from cropland. Tracy's business cannot be found to constitute a public nuisance absent evidence or proof that the environment has been adversely impacted or that the public, as opposed to the immediate neighborhood, was in some way damaged. Neither does mere depreciation in neighboring property values constitute a public nuisance. In short, there is no evidence or proof in the

record which would support a finding that Tracy's business adversely impacts public health or the safety of the general public or otherwise interferes with a right "common to all members of the general public."

We find that Tracy's business does not sufficiently interfere with a public right that it can result in a public nuisance.

## CONCLUSION

We find the zoning regulation under which the county sought to enjoin Tracy from operating his business to be invalid. Likewise, we find that Tracy's business is not a public nuisance. For these reasons, we reverse the district court's order enjoining Tracy from operating his business and direct that the cause be dismissed.

REVERSED.