(No. 29912.—

County of Winnebago *et al.*, Appellees, *vs.* Jacob C. Niman *et al.*, Appellants.

*Opinion filed March 19, 1947—Rehearing denied May 19, 1947.*

C. A. PEDDERSON, of Rockford, for appellants.

MAX A. WESTON, State's Attorney, ROBERT R. CAN-
FIELD, AND FRANK E. MAYNARD, all of Rockford, for
appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

The plaintiffs, County of Winnebago and Doyle Bowers,
county zoning enforcing officer, commenced this action in
the circuit court of Winnebago county to enjoin defendants,
Jacob C. and Sophia Niman, from constructing a new
slaughterhouse on their farm without a permit and from
enlarging a nonconforming use in violation of the county
zoning ordinance. A temporary injunction issued. After a
hearing, the injunction was made permanent and defendants
were ordered to tear down and dismantle the part of the
building already constructed. Defendants prosecute a direct
appeal to this court, a constitutional question being prop-
erly presented.

Defendants are the owners of a twenty-acre farm lo-
cated about 2½ miles northwest of the city limits of Rock-
ford. The property fronts on a concrete highway, the
north side of which is but sparsely settled. The land to
the south is low and without habitation. Defendants have
operated a slaughterhouse on their farm since 1937, using
a barn and a small shed for slaughtering purposes, the
farm house serving as the office and a washroom for the
four employees. The premises are also equipped with plat-
form scales, cattle pen and feed crib. The Department of
Agriculture of the State objected to the practice of send-

ing freshly slaughtered meat to a refrigerator in Rockford and ordered defendants to install a refrigerator on the farm, to put in a new drainage system and to make other improvements. Because of the extensive nature of the necessary alterations, defendants decided to build a modern, concrete slaughterhouse rather than to incorporate the improvements in the existing structures. The proposed building has a higher daily slaughtering capacity and is considerably larger than the original slaughterhouse, although most of the increase in area results from the plans for a large refrigerator room. Construction was begun in the latter part of 1945 and was well on the way to completion when this action was filed.

By their complaint, plaintiffs alleged that defendants' land is zoned for agricultural purposes under the county zoning ordinance, adopted March 24, 1942, and claimed that the operation of a slaughterhouse on the farm at the time the ordinance was passed constituted a nonconforming use. Plaintiffs charged, however, that defendants have violated the ordinance in two respects,—in beginning construction without a building permit and in expanding a nonconforming use. Among several defenses, those chiefly relied upon by defendants, both here and in the circuit court, are that the ordinance is invalid in its application to their property, first, for the reason that no proper maps or plats were attached to or on file with the ordinance disclosing the use restrictions on their property and, secondly, because it deprives them of property without due process of law and without just compensation, in contravention of constitutional guaranties.

In connection with defendants' first contention, it appears from the evidence that, on March 5, 1942, the zoning commission of the board of supervisors of Winnebago county made a report to the full board and submitted for passage a proposed zoning ordinance accompanied by two books of zoning maps, one of 113 pages and the other

consisting of 14 pages. Defendants' property is nowhere described in the body of the ordinance. In addition, neither book of zoning maps includes a map of the western part of Rockford township where defendants' farm is located. On March 24, 1942, the board of supervisors adopted the ordinance including the two books of zoning maps, and the ordinance and maps were duly filed with the county clerk.

On one of the maps attached to the ordinance and incorporated by reference, the following notation appears: "This is the east half of the township that was formerly Guilford township. See special map for west half of township." Rockford township was formerly known as Guilford township. Plaintiffs introduced in evidence, as "Exhibit 2," a large, framed map, labeled "Zoning Map of Part of Rockford Township—Winnebago County, Ill.," and contend that it is the map referred to; that it was before the board of supervisors on March 24, 1942; that it was adopted with and made part of the county zoning ordinance, and that it was filed with the county clerk. In many respects, the evidence relating to these assertions is either conflicting or incomplete. Twelve members of the county board of supervisors were called as witnesses. Of these, three, who were also members of the zoning commission which drafted the ordinance, testified that the map in question, namely, "Exhibit 2," was before the county board when the ordinance was debated and voted upon on March 24, 1942. Of the nine other supervisors, five of whom had voted against the adoption of the ordinance, some had no present recollection of that particular board meeting, others testified that they did not see the map, while still others gave definite testimony that the map was not in the room at the board meeting on March 24, 1942.

There is no substantial evidence that plaintiffs' "Exhibit 2" is the special map for the west half of Rockford township. The map itself embraces the entire township.

Furthermore, the zoning colorations on the map are not limited to the west half. During the cross-examination of Roy Gustafson, part-time deputy county clerk and part-time assistant investigating officer for the county zoning board of appeals, the court having twice stated that plaintiffs' "Exhibit 2" was the special map referred to in the book of maps, the witness testified that he did not know whether the exhibit was the special map referred to. A search of the record reveals no other evidence on this issue.

The question as to whether the map was ever filed in the county clerk's office is complicated by the fact that it had previously been filed in the clerk's office under peculiar circumstances in an effort to support an earlier invalid county zoning ordinance. (*County of Winnebago* v. *Cannell*, 376 Ill. 277.) The map itself bears the notation that it was filed October 5, 1938, "as per order of board 6/11/40," and states that it is one of the maps and plats attached to the zoning ordinance passed October 5, 1938. No other filing is indicated, while presumably all the pages of the two books of zoning maps accompanying the 1942 ordinance bear a filing date of March 24, 1942, or later. There is nothing on the face of the map to indicate that it has any relation whatsoever to the 1942 county zoning ordinance. Indeed, the map does not even bear the seal of the county clerk.

In 1942, the office of the zoning board was located on the third floor of the court house, the meetings of the county board were conducted on the second floor and the county clerk's office was also on the second floor. In December, 1945, the zoning office was relocated and moved into space on the second floor which it shared with the county clerk's office. On direct examination, Al Hougan, a member of the county board appointed to the zoning commission, testified that, on March 24, 1942, immediately after the board meeting, he took the map, plaintiff's "Exhibit 2," to the county clerk's office and that he obtained

it from the clerk's office for use upon the trial. On cross-examination, it developed that, on March 24, 1942, the map was taken from the office of the zoning board on the third floor to the board meeting on the second floor and that the map was then taken back to the zoning board's office. In his capacity as part-time deputy county clerk, Gustafson testified that the map had been on file in the county clerk's office on the second floor from March 24, 1942, or earlier, to the time it was introduced in evidence at the trial. James R. Cannell, county clerk since December, 1942, and formerly a member of the county board of supervisors, testified that he did not see the map at the board meeting on March 24, 1942; that the map had never been on file with the county clerk since he took office, and that the first time he saw it was in December, 1945, when the zoning board and its files were removed from the old office on the third floor of the court house into one of the rooms on the second floor assigned to the county clerk.

On this aspect of the case and on this state of the record, the chancellor found that the zoning map of Rockford township, described as "Exhibit 2," was among the maps and charts presented as part of the county zoning ordinance; that it was present before the county board of supervisors at the time the ordinance was passed on March 24, 1942, and referred to as part of the ordinance; that, upon the adoption and passage of the ordinance, the map became part of the zoning ordinance, and that, thereafter, the map was filed in the office of the county clerk together with the zoning ordinance.

These findings are without a legitimate basis in the record. In the report of the zoning commission on March 5, 1942, submitting the proposed ordinance and two books of zoning maps, the single map of Rockford township is not mentioned. The map is framed, has a cardboard back, and is much larger than the other maps. The testimony

is highly conflicting as to whether the map was present at any time during the meeting on March 24. A concession that the map was before the county board does not aid plaintiffs. The map is not referred to in the ordinance, and there is no evidence that this map is the "special map" referred to at the bottom of one of the maps in the book of zoning maps. On its face, the map purports to be part of the 1938, not the 1942, county zoning ordinance. If brought to the meeting of the board of supervisors, it came from the office of the zoning board, and not the county clerk's office, and was returned to the files of the zoning board on the third floor. Lastly, the map does not bear the seal of the county clerk, and does not appear to have been filed with or even in the possession of the county clerk subsequent to the adoption of the ordinance. To the contrary, it affirmatively appears that the map has at all times been in the files of the zoning board and has, since December, 1945, been in the county clerk's office only to the extent it was a part of the files of the zoning board and then only because space in the office of the county clerk was allocated to the zoning board.

In *County of Winnebago* v. *Cannell*, 376 Ill. 277, the Winnebago county zoning ordinance, adopted October 5, 1938, was declared invalid as entirely meaningless without land use maps being attached to the ordinance. The same situation obtains in the present cause with respect to the west part of Rockford township. A zoning map of this area was not submitted to the county board by the zoning commission, and was not contained in the two books of zoning maps attached to the ordinance and made part thereof. Nor was it properly filed with the county clerk. Without a zoning map of the west part of Rockford township, it cannot be ascertained from the ordinance itself what regulations are prescribed and what uses are permitted for any given parcel in the area. The county zoning ordinance being inapplicable to the west part of Rock-

ford township, defendants are not bound by its provisions and, consequently, cannot be adjudged guilty of any violation of the ordinance.

Our conclusion being that the challenged zoning ordinance is inapplicable to defendants' property located in the west part of Rockford township, a consideration of the other contentions made and urged by the parties becomes unnecessary.

The decree of the circuit court of Winnebago county is reversed and the cause remanded, with directions to dismiss plaintiffs' complaint for the want of equity.

*Reversed and remanded, with directions.*