44 So.2d 593

### ALABAMA ALCOHOLIC BEVERAGE CONTROL BOARD et al. v. CITY OF BIRMINGHAM.

6 Div. 996.

Supreme Court of Alabama.

Jan. 12, 1950.

Rehearing Denied March 9, 1950.

E. C. Boswell, of Geneva, and Lange, Simpson, Robinson & Somerville, of Birmingham, for appellants.

404

J. M. Breckenridge, of Birmingham, for appellee.

STAKELY, Justice.

This case involves the procedure which a city must pursue to determine the location within its limits of state liquor stores. The power of the municipality to establish such locations under the applicable statutes is not questioned.

Alabama Alcoholic Beverage Control Board, J. D. Adams, V. G. Oliver and Cecil Smith as complainants filed their original bill in the circuit court, in equity, against the City of Birmingham and sought the issuance of an injunction. The cause was submitted upon application for a temporary injunction, which the court denied after hearing. Sec. 1054, Title 7, Code of 1940. This appeal is from that decree. The case for the complainants was rested on the verified bill, while the respondent introduced an ordinance of the City of Birmingham which appears in the City Code as section 696.

Alabama Alcoholic Beverage Control Board was created by Act of the Legislature of 1937, General Acts 1936–1937, Ex. Sess., p. 40, which now appears as Title 29, Code of 1940. Jefferson County is a wet county. J. D. Adams is a resident of Jefferson County, and is the manager of a liquor store numbered 18, established by the board at the street address known as 2704-6 29th Avenue, North, in the City of Birmingham. V. G. Oliver is a resident of Jefferson County, and is the manager of another liquor store, numbered 75, established by the board at the street address known as 2620 31st Avenue, North, in the City of Birmingham. Cecil Smith is a resident of Jefferson County, and is the owner of the land and building thereon on which is located store number 75. The store has been leased to the board, a copy of the lease being attached to the bill as an exhibit and made a part thereof. The stores numbered 18 and 75 were established by the board on August 26, 1937 and October 15, 1947, respectively, and have since

been "constituted, conducted and operated as authorized by the aforesaid Act."

On November 30, 1943, the City of Birmingham purported to adopt an ordinance zoning a part of the city with reference to the location of liquor stores. This ordinance reads as follows:

"Sec. 696. Zones within which liquor or wine may be sold.

"It shall be unlawful for any person, whether a liquor licensee or not, to sell or offer for sale or to serve or dispense for reward or offer to serve or dispense for reward, any liquor or wine at any place in the city outside the zones hereinafter described in this section, whether such place be a state liquor store or a licensed liquor place or not, the zones within which the prohibitions of this section do not apply being as follows:"

(Here follows a description of the liquor zones which need not be here set out.)

Both of the stores are located within the territorial limits of the City of Birmingham but not within that part of the city which the ordinance purports to set apart for such stores.

The sale of liquor was begun at store 18 on August 25, 1937. Store No. 75 was built in 1947 and July 10, 1947 Cecil Smith obtained a permit from the city to build the store for the specific purpose of being used as a store for the sale of liquor. The permit was set out in the bill.

After each store began operations it continuously sold liquor until November 15, 1949 when the complainants J. D. Adams and V. G. Oliver, the managers of the stores, were arrested for violation of section 696 of the City Code. Prior to that time the Alabama Alcoholic Beverage Control Board received a written notice from the City of Birmingham demanding that both stores be closed by November 15, 1949. Both managers were threatened with further arrest, respectively, in the event either reopened or continued to operate the liquor stores. It is alleged that the arrest and threats of arrest made it impossible to continue operation of the stores and that section 696 of the City Code is void for the reasons, among others, which are set out as follows:

"(a) Said ordinance was adopted by the City of Birmingham without first giving notice of the purpose of the city to adopt said ordinance required by Articles 1 and 2 of Chapter 16 of Title 37 of the Code of Alabama of 1940.

"(b) Said ordinance did not include the whole municipal territory of Birmingham in a comprehensive plan as required by law."

The Act of the Legislature known as the Alabama Alcoholic Beverage Control Board Act now appears as sections 1 to 78, inclusive, Title 29, Code of 1940. In section 2 the declared purpose of the Act is to prohibit under the police power of the State transactions involving alcoholic beverages which take place wholly within the state, except by and under control of the board. The Act makes provision for the establishment of the board and in section 5 gives the board the right to buy, manufacture and sell alcoholic beverages and to determine the localities within which a state store shall be established and operated and the location of such store. No liquor store can of course be located in a dry county, but as to wet counties we note the broad general power given the board under section 5 as follows, "to determine the localities within which any state store shall be established and operated and the location of such store. * * * The board shall have the power to establish and maintain state stores for the sale of liquors as herein defined."

▇ The broad power and exclusive control, to which we have alluded, has two exceptions or provisos: (1) "location of liquor stores shall be not be adjacent to schools or churches or in a neighborhood which is exclusively residential" and (2) "Provided, however, that municipalities may by *proper zoning ordinances* establish zones or districts within which such liquor stores may or may not be established."

(Emphasis supplied.) We think it clear that neither in section 5 nor in any part of the Act is the power and authority vested in the board in any way given to the municipality, except that by a *proper zoning ordinance* the city may limit the power of the board as to the location of the store. So it is obvious that the case turns on the interpretation to be given the words "proper zoning ordinance," which appear in the statute, and at the outset in discussing these words in order to arrive at the intention of the Legislature we should note that a city has no inherent power to enact and enforce zoning regulations. In this connection we quote the following authorities: "But municipal power to enact and enforce zoning regulations does not exist in the absence of statutory or constitutional authorization, express or implied; the municipality has no inherent power to enact zoning ordinances." 58 Am.Jur., p. 943, § 7.

To the same effect is 43 Corpus Juris, § 364, page 335, where, in speaking of the right to zone, it is said: "The power is not an inherent one; it can be exercised only when it is expressly conferred upon the municipal corporation or arises by necessary implication." See, also, 62 C.J.S., Municipal Corporations, § 226.

White v. Luquire Funeral Home, 221 Ala. 440, 129 So. 84; Leary v. Adams, 226 Ala. 472, 147 So. 391.

█ In this State this Court has had occasion in several instances to consider zoning ordinances and in each case has been careful to point out that piecemeal or spot zoning is not permissible, but on the contrary the zoning ordinance must set out what is known as a comprehensive zoning plan. Since the court has in these cases shown what it regards as a proper zoning ordinance, it is reasonable to assume that the Legislature had these decisions in mind when it refers to "proper zoning ordinance." If no significance is to be attached to the words "proper zoning ordinance" why did the Legislature not simply give the city the power to determine the location of liquor stores within its limits or state that the city could do so by ordinance?

In the case of Chapman v. City of Troy, 241 Ala. 637, 4 So.2d 1, this Court, speaking through Mr. Justice Bouldin, held that a single ordinance laying off a small portion of a city as a residential district, taking no account of other areas equally residential in character, and without any comprehensive planning with a view to the general welfare of the inhabitants of the city as a whole, is not permissible. The opinion expressly condems piecemeal ordinances and states without hesitation that they are not favored or permissible. In that case, the City of Troy attempted to create and establish a zone or district for residential purposes only and selected a given area. The Court held that the right to zone is a restricted one, and if there is an attempt to exercise such right it must be done in accordance with a comprehensive plan. It follows that if the right is encompassed with restrictions and limitations, then clearly the municipality cannot have a so-called inherent right to zone. Davis v. City of Mobile, 245 Ala. 80, 16 So.2d 1, is to the same effect.

Another case decided by this Court that very clearly condemns piecemeal or "spot" zoning is Johnson v. City of Huntsville, 249 Ala. 36, 29 So.2d 342, 344. The City of Huntsville selected a small area and designated it as a residential zone. The Court quotes "with approval from Bassett in his work on zoning" as follows: "'No municipality is compelled by law to enter into zoning. The state enabling acts are permissive only. But if a municipality decides to zone it must follow the procedure given in the state act; otherwise its ordinance will be null and void. * * * A zoning ordinance covers a single political subdivision—a city, village, borough, town or county. Inasmuch as lands situated alike should be zoned alike, the zoning map ought to cover the whole of the political subdivision.'"

█ So it can be seen from the foregoing authorities that the city is under no duty or obligation to zone, but if it does attempt to zone, it must follow the pro-

cedure prescribed in the act giving it the power to zone. We must accordingly assume that the requirements of the Act authorizing zoning, Articles 1 and 2 of Chapter 16, Title 37, Code of 1940, sections 772 to 785, inclusive, give to municipalities the right and authority to establish zoning districts. It is to be noted that section 773 prohibits the passage of any zoning ordinance until advertisement of the same has been made. In part this section provides: "No ordinance shall be passed by any municipal corporation under the authority of this article unless and until the proposed ordinance has been published for at least fifteen days in advance of its passage in a newspaper of general circulation within the municipality."

Also section 778, Title 37, Code of 1940, likewise provides that no ordinance shall be passed by any municipal corporation under the provisions of Article 2, Chapter 16, Title 37, Code of 1940, unless and until the proposed ordinance has been published at least once a week for two consecutive weeks in advance of its passage. So, there are two separate code sections placing a positive and direct restriction against the right of the city to adopt a zoning ordinance unless and until due advertisement thereof is made.

It is admitted in this case that the ordinance in question was not so advertised. Therefore it must fall and it must be declared void and inoperative. State ex rel. Lightman v. Nashville, 166 Tenn. 191, 60 S.W.2d 161.

■ Accordingly, if the ordinance in question was passed under the authority and grant of power given by the Legislature, as embodied in Articles 1 and 2 of Chapter 16, Title 37 of the Code, then the ordinance is void for either one or both of the stated reasons, namely: (1) it was not advertised prior to its passage, and (2) it is an attempt at piecemeal or spot zoning, which this Court has declared illegal and not permissible. The ordinance here involved appears to be a piecemeal or spot zoning ordinance and not an amendment to an already existing comprehensive zoning ordinance. Of course, if it were such amendment, advertising prior to the amendment would still be necessary.

■ But it is argued that a city may create or establish various areas or zones which do not come within the provisions of Articles 1 and 2 of Title 37, as for example (1) the parking zones, (2) school zones, (3) hospital or quiet zones, (4) speed zones, (5) parking meter zones and (6) limitation parking zones. The foregoing do not constitute zoning in the usual or ordinary sense but they are an exercise of the police power as authorized by Sec. 455, Title 37, Code of 1940; Davis v. City of Mobile, supra. Zoning as ordinarily used has to do with the structural design of buildings or the use to which buildings within designated districts may be put. 43 Corpus Juris page 333; 62 C.J.S., Municipal Corporations, § 226(1). An examination of section 772, Title 37, Code of 1940, shows that the purpose of the zoning statutes is to divide the territory within the corporate limits of a city into business, industrial and residential zones or districts and provide the kind, character and use of structures and improvements that may be made or erected therein.

■■ If it is contended that parking meters or similar devices are structures, it is sufficient to say that the zoning statutes are not applicable because such structures are in use by the cities in a governmental capacity, City of Decatur v. Robinson, 251 Ala. 99, 36 So.2d 673, and when this is the situation the prohibitions and restrictions of a zoning ordinance do not ordinarily apply. 58 Am.Jur. pp. 1008-9. Moreover establishment of parking meters is an exercise of the police power apart from the zoning power. City of Decatur v. Robinson, supra.

■ While we recognize that the operation of a liquor store is a governmental function, State ex rel. Wilkinson v. Murphy, 237 Ala. 332, 186 So. 487, 121 A. L.R. 283, this is no reason why the Legislature cannot provide that a liquor store may be included within a zoning ordinance. A liquor store is a place where alcoholic

beverages are placed on sale and sold to customers as in other stores and for this reason from the standpoint of zoning, could well be regarded as a business within the statute which authorizes a city to be divided into "business, industrial, and residential zones."

We conclude that ordinance 696 is invalid for the reasons given and the complainants are entitled to relief. The decree of the lower court is accordingly reversed, a temporary injunction is granted and the cause is remanded.

Reversed, rendered and remanded.

BROWN, FOSTER, LIVINGSTON and LAWSON, JJ., concur.