BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SARPY, NEBRASKA, APPELLEE, V. CLARA MARIE MCNALLY, APPELLANT.

95 N. W. 2d 153

Filed February 27, 1959. No. 34508.

Richard G. Stehno and Eugene L. Wohlner, for appellant.

Dixon G. Adams, for appellee.

Heard before SIMMONS, C. J., CARTER, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

The subject of this appeal is the legality of a judgment granting a permanent injunction prohibiting appellant from using Lots 4 and 5, Old Orchard Place, an addition to Sarpy County, owned by her, for the purpose of operating her business of automobile wrecking and storage. A primary issue presented by the appeal is the validity of zoning measures or regulations adopted by appellee on behalf of and for Sarpy County, referred to as resolutions.

The resolution bearing date of May 3, 1941, applied to territory in Sarpy County outside of incorporated municipalities including the real estate of appellant above described. The resolution restricted the use of real property within the territory and made the use thereof subject to the conditions specified in it. It divided the territory into eight districts from the highest restriction class to the lowest restriction class. The text of the resolution did not describe the area or the boundaries of any district but it did contain this lan-

guage: "The boundaries of such districts are hereby established as shown on the Zoning Plan which accompanies and is hereby made a part of this regulation." Appellee by resolution bearing date of June 15, 1942, amended the original resolution in many respects.

A resolution adopted by appellee bearing date of March 28, 1955, recited that the Sarpy County zoning regulations and the zoning plan adopted and partially amended are hereby wholly amended. It affected the same territory as the original resolution dated May 3, 1941. The resolution restricted the use of real property within the territory and made the use thereof subject to the conditions specified in it. It divided the territory into 12 districts from the highest restriction class to the lowest restriction class. The text of the resolution did not describe the area or the boundaries of any district but it did contain this language: "The boundaries of such districts are hereby established as shown on the Zoning Plan which accompanies and is hereby made a part of this regulation." Appellee by resolution bearing date of April 16, 1956, amended the resolution bearing date of March 28, 1955, in many respects. There is no proof that there has ever been any map or, in the language of the resolution, zoning plan, attached to any of the resolutions mentioned and described above. The written text of the resolution bearing date of May 3, 1941, and the written text of the resolution bearing date of June 15, 1942, were published by being printed in book or pamphlet form. The text of either of them was not otherwise published. The zoning plan, hereafter called the map, delineating the boundaries of the districts was not included in and made a part of the book or pamphlet containing the printed text of the resolution. The proof is that the map first referred to in the record was not adopted until June 15, 1942, more than a year after the original resolution was passed by appellee. The record is conclusive that the map referred to in the original resolution as being a part thereof was never published in

any manner as required by the applicable statute.

There is in the record what purports to be two pages of an issue of a newspaper the heading of which is: "Bellevue Press, Bellevue, Nebraska, Friday, April 15, 1955," on which is printed the resolution bearing date of March 28, 1955. There is no proof of publication exhibited. There is no proof that what is exhibited by the two pages of printed matter was an intended or authorized publication of the text of the resolution. There was not included as a part of it any map describing any zoning district. It is much more important that it was stipulated at the trial that the resolution of March 28, 1955, and the one containing the amendments thereto of April 16, 1955, were published by printing the written text of each of them in pamphlet form and that they were not otherwise published. There was no map included in or made part of the pamphlet in which the text of the resolutions last referred to was published. There was no publication of a map describing the boundaries of the districts specified in the resolutions or either of them as provided and required by law.

It is made indisputable by the record that without a map it could not be ascertained from any of the resolutions what regulations and restrictions were prescribed and what uses were permitted for any given parcel of land in the zoning area. The conclusion is inescapable that the resolutions or any of them were not published as required by law.

There is no issue in this case concerning the authority of appellee to adopt and make effective zoning regulations in Sarpy County by compliance with applicable statutory provisions. The challenge made by appellant is that the attempt of appellee in this regard was procedurally deficient and ineffective. A statutory requirement is that any zoning resolution adopted by the county board "* * * shall be published in book or pamphlet form or in a legal newspaper published in

and of general circulation in the county one time * * *."
§§ 23-114 and 23-171, R. R. S. 1943. The precise prob-
lem concerning the publication of the resolutions pre-
sented by this case has not previously engaged the con-
sideration and decision of this court but it and other
closely related situations have been discussed and de-
termined in other jurisdictions.

In Berrata v. Sales, 82 Cal. App. 324, 255 P. 538,
the court said: "The city of Petaluma in purporting to
adopt a zoning ordinance, which did not describe the
respective districts except by reference to a certain
zoning map on file with the city clerk, but which map
was not published in connection with the publication
of said purported ordinance, did not comply with the
requirement * * * of the charter of said city that no
ordinance shall be passed by the council 'until its pub-
lication at least once in full in the official newspaper';
and said purported ordinance was void." It is said in
the opinion in that case: "The trial court found that the
procedure mapped out in the act of the legislature was
not followed, in that no notice was ever given by the
city council, as required by the act of the legislature
referred to. * * * It needs no citation of authority to
support the statement that notice of the proposed pas-
sage of a zoning ordinance limiting the use of property
which, otherwise, naturally attaches to the property in
question is a substantial matter and is one of which prop-
erty owners are entitled to notice. The property owner,
as has been so frequently said in other cases, is entitled
to have his day in court. * * * It will be seen from the
quotations which we have set forth of the proposed
zones that no streets are mentioned, and so far as the
published ordinance is concerned, it cannot be ascer-
tained therefrom where the commercial district or busi-
ness district or zone created by the ordinance exist in
the city of Petaluma."

Village of Durand v. Love, 254 Mich. 538, 236 N. W.
855, considered an ordinance fixing the fire limits of

a village which recited that the portion thereof described and shown on a certain map and blueprint, Exhibit A, on file in the office of the village clerk, the same being a part of the ordinance, "* * * be and the same is hereby designated and declared to be the fire limits of the village of Durand." The court concluded: "An ordinance sometimes may refer to a public record already established by lawful authority and become effective without publication of such record as part of the ordinance. But Exhibit A was drafted solely for the purpose of the ordinance and to define the fire limits, had no prior official approval and had no purpose, use, force, or official sanction except as it was given by and as part of the ordinance. An ordinance cannot at the same time establish a paper as a public record and also incorporate it by reference as a previously established public record. Without publication of the map, the ordinance was not published in full, did not comply with the statute, and is void."

W. H. Barber Co. v. City of Minneapolis, 227 Minn. 77, 34 N. W. 2d 710, considered an ordinance which provided: " 'The City of Minneapolis is hereby divided into five (5) districts aforesaid and the boundaries of such districts are shown upon the map attached hereto and made a part of this ordinance, being designated as the Use District Map * * *.' " The court concluded: "The publication of the ordinance and the map was required by virtue of * * * the Minneapolis city charter, which provides that before any ordinance shall be in force it shall be published in the official paper of the city. This requirement is mandatory, and it is clear that failure to comply therewith would render any ordinance ineffective. As stated in Basting v. City of Minneapolis, 112 Minn. 306, 308, 127 N. W. 1131, 140 A. S. R. 490: '* * * The charter of the city provides that no ordinance enacted by the city council shall take effect until * * * it has been published by the city clerk in the manner prescribed. * * * The approval and publication were

essential elements in the passage of the ordinance and a consummation or completion of the legislative power of enactment.' * * * The rule making publication of an ordinance mandatory before it may take effect if charter provisions require such publication has been held to require publication of zoning maps made part of city zoning ordinances. * * * It is expressed in the Sherwin case as follows (30 Pa. D. & C. 705): 'While the requirements that the zoning map be published along with the body of the ordinance may work a hardship upon the defendants, the law clearly intends that the entire ordinance be published unless other provisions be made. Knowledge that a measure is pending by one whose rights may be affected by its enactment will not cure a defect of publication: * * * For this reason the failure to publish the ordinance in its entirety is fatal.' "

The statute considered in Benton v. Phillips, 191 Ark. 961, 88 S. W. 2d 828, prescribed the manner of giving notice of a zoning ordinance. It was not complied with. The court declared: "The only authority cities of the second class have to pass zoning ordinances is that conferred upon them by act 108 of the Acts of 1929. Of course, in exercising this special authority, they must comply with the act in order to render their ordinances valid relative to zoning the city. * * * The purpose of this provision was to give every one notice of the plan so that they might make suggestions and objections thereto as well as to acquaint every one purchasing lots with the use to which they might be put. In placing restrictions of this kind upon the use of real estate, notice was necessary and should have been given in the manner prescribed in the act conferring the power to do so upon cities. It is necessarily a mandatory provision in the law, and must be followed in the passage of the zoning ordinance. * * * Having failed to comply with the act in the passage of the zoning ordinance, same is void * * *."

In Katz v. Higson, 113 Conn. 776, 155 A. 507, a zoning

ordinance involved was required to be published at least twice. The zoning commission prepared an ordinance and caused it to be published with an accompanying map with notice of public hearings to be held in reference to it. They were held and substantial changes were made in the ordinance and map. The matter was then presented to the council of the city and it adopted and published an ordinance that: " 'The zoning ordinance as presented by the zoning commission, together with the accompanying map, be, and the same are hereby adopted, with the following exceptions' * * *." The exceptions were stated. This ordinance was advertised in two issues of a newspaper. In adjudging the ordinance last referred to void the court said: "The purpose of the provision in the charter requiring the publication of ordinances is to inform the public of the laws which govern them, and the requirement should be interpreted accordingly. * * * To give effect to that purpose the legislature deemed it best to require that each ordinance should be published; it evidently considered that more ought to be done than merely to give notice that an ordinance concerning a certain matter had been enacted, leaving persons interested in or possibly affected by it to find out for themselves its precise terms. Obviously this was the effect of the publication of the ordinance before us * * *. Only by printing the entire ordinance including that proposed by the commission and made a part of it would such notice be given as would satisfy the provision we have quoted from the charter. The publication which was made was insufficient."

Kelly v. City of Philadelphia, 382 Pa. 459, 115 A. 2d 238, in considering a city zoning regulation observed that zoning laws are enacted in the exercise of the police power and in the absence of specific legislation or a constitutional grant municipalities have no authority to enact zoning ordinances. The court further stated: "Where the Legislature in conferring police powers upon

a municipality has with particularity designated a specified length of time respecting notice to citizens of a hearing, its clearly expressed and mandatory provisions cannot be relaxed; and an ordinance adopted under the police power without compliance with the statutorily prescribed notice of hearing, is invalid."

In State ex rel. Lightman v. City of Nashville, 166 Tenn. 191, 60 S. W. 2d 161, it is stated: "This provision of the charter is mandatory. * * * It is made so by the negative words in section 4, which in effect declare that the City Council shall have no authority to determine the boundary of any district or impose any regulations until after the final report of the zoning commission based on public hearings. Statutes prescribing how the delegated police power may be exercised are mandatory and exclusive of other methods. * * * It is admitted on the record that these mandatory requirements were not met."

In Fierst v. William Penn Memorial Corp., 311 Pa. 263, 166 A. 761, the statute involved required a zoning ordinance to be published in a newspaper, including any map referred to in the ordinance, or if the map was not published with the text of the ordinance the ordinance should state the place where the map was on file and could be examined. None of these requirements were complied with except the text of the ordinance was published. It is said in the opinion: "It is contended by appellant township that, while it did not publish a copy of the zoning plan, or state with particularity, in the publication of the ordinance, where the zoning plan was on file and could be examined, there was substantial compliance because, in a section of the ordinance as published, it was stated 'the location and boundaries are hereby established as shown on the zone map which accompanies this ordinance, and which is hereby declared to be a part hereof.' It is difficult to see how this meets the requirement that in the publication of the ordinance reference shall be made to the

place where the map is on file and can be examined. The mere statement that the zone map accompanied the ordinance did not indicate where it was on file or could be examined. * * * Nor do we think it matters that appellees had knowledge of the provisions of the zoning ordinance before establishing the cemetery. We are not dealing with a valid ordinance, but with an invalid one. Knowledge of the existence of an invalid ordinance cannot cure the defect. Failure to follow the express provisions of the law as to publication made the ordinance of no effect. There are numerous cases which hold that the publication of municipal ordinances is mandatory and until complied with as the law directs, such ordinances are ineffective * * *. Without the map the ordinance is unintelligible, as these extracts from it will show: 'The location and boundaries of the said Use Districts are hereby established as shown on the zone map which accompanies this ordinance * * *.' "

In Milano v. Town of Patterson, 197 Misc. 457, 93 N. Y. S. 2d 419, the zoning ordinance stated that the boundaries of the several districts were to be created and shown "on the map entitled 'Building Zone Map of the Town of Patterson' which accompanies this ordinance and is hereby declared to be a part thereof." No map was published although the text of the resolution was. The opinion states: "The publication was defective and incomplete. By the language used the zoning map was made a part of the zoning ordinance. This map was never published, hence section 269 of the Town Law was not complied with. This failure renders the ordinance void * * *."

Alabama Alcoholic Beverage Control Board v. City of Birmingham, 253 Ala. 402, 44 So. 2d 593, states: "So it can be seen from the foregoing authorities that the city is under no duty or obligation to zone, but if it does attempt to zone, it must follow the procedure prescribed in the act giving it the power to zone. * * * there are two separate code sections placing a positive

and direct restriction against the right of the city to adopt a zoning ordinance unless and until due advertisement thereof is made. * * * It is admitted in this case that the ordinance in question was not so advertised. Therefore it must fall and it must be declared void and inoperative."

Hutchison v. Board of Zoning Appeals, 138 Conn. 247, 83 A. 2d 201, concerned an attempt to make a change in zone boundaries. The requirements to effect such a modification were not observed. The opinion of the court states: "Compliance with these provisions is a prerequisite to any valid and effective change in zone boundaries. * * * Failure to comply with any of the required steps constitutes a jurisdictional defect. * * * The underlying purpose of such requirements is 'not to permit changes, exceptions or relaxations (in zoning regulations) except after such full notice as shall enable all those interested to know what is projected and to have opportunity to protest, and as shall insure fair presentation and consideration of all aspects of the proposed modification. This is not a technical requirement difficult of performance by the unwary. It is dictated by common sense for protection of an established neighborhood to be subject to change only after fair notice.' Kane v. Board of Appeals of Medford, 273 Mass. 97, 104, 173 N. E. 1."

In Village of Williston Park v. Israel, 301 N. Y. 713, 95 N. E. 2d 208, the Court of Appeals said: "Special Term ruled that 'By reason of the failure to publish the map, to post the map, to include the map in the ordinance as published or to set forth that such map was on file in the office of the village clerk, and by reason of the failure of the ordinance to otherwise describe in the text of the ordinance the use districts attempted to be created, the ordinance is null and void.' * * * Judgment affirmed * * *."

Leahy v. Inspector of Buildings of New Bedford, 308 Mass. 128, 31 N. E. 2d 436, makes this statement: "But

the Legislature could determine the extent of the power granted to these municipalities and prescribe the terms and conditions under which it could be exercised, and action taken beyond the authority conferred or not in compliance with the terms and conditions governing its exercise would be invalid."

In Union P. Ry. Co. v. Montgomery, 49 Neb. 429, 68 N. W. 619, this court said: "Another suggestion made is that the first section of the ordinance is valid for the reason one publication is sufficient as to it, since it does not impose a penalty. Doubtless there are ordinances in which parts may be upheld, while others are rejected as invalid. But this ordinance does not belong to that class. The statute expressly requires that an ordinance which prescribes a penalty shall be published in a certain manner and for a specified period. This requirement applies to the whole of such an ordinance, and not merely to the penal portion. Such is the plain import and meaning of the statute." See, also, L. A. Thompson Scenic Ry. Co. v. McCabe, 211 Mich. 133, 178 N. W. 662; Schierloh v. Wood, 230 App. Div. 788, 244 N. Y. S. 651; Wood v. Town of Avondale, 72 Ariz. 217, 232 P. 2d 963; Moon v. Smith, 138 Fla. 410, 189 So. 835; County of Winnebago v. Niman, 397 Ill. 37, 72 N. E. 2d 818; Rock Island Metal Foundry v. City of Rock Island, 414 Ill. 436, 111 N. E. 2d 499.

The resolutions or any of them did not create use districts and attempt to define them with respect to boundaries. The map referred to in the respective resolutions identified the use districts and neither of the maps was published within the meaning of the statutes requiring publication of the entire resolution. No notice of any kind of the boundaries of the several districts was published. There is nothing in the text of the resolutions as they were published that gave notice to anyone as to the boundaries of the districts. Notice is futile unless a property owner is able to determine from such notice that his property is or is not affected.

This would seem to be the obvious purpose of the statutory requirement for publication of the resolution. The publication made was insufficient as to each of the resolutions.

Grant of power to a county in this state is strictly construed. State ex rel. Johnson v. County of Gage, 154 Neb. 822, 49 N. W. 2d 672. A zoning resolution is in derogation of the rights of an owner under the common law and it follows that the procedure prescribed by the Legislature in the exercise of the police power is strictly construed and must be rigidly followed. Milano v. Town of Patterson, *supra.*

Appellee attempts to sustain the validity of the resolutions by appealing to the doctrine that there is a presumption that public officers perform their duties in accordance with law and that it is presumed that statutory requirements as to publication of legislation such as the resolutions here involved were complied with. There is a presumption that legislation valid on its face was enacted as required by applicable law. Wagner v. City of Omaha, 156 Neb. 163, 55 N. W. 2d 490. There is no presumption of official action lawfully performed when the contrary is established. The record under review evidences without dispute that the resolutions important to this case were not published in any manner authorized by the statute which gives appellee the only authority it has to act in the field of zoning. Union P. Ry. Co. v. Montgomery, *supra,* discusses this subject in this manner: "It is urged that the same presumption prevails in favor of the validity of an ordinance that there is in favor of the validity of a judgment or of an act of the legislature. Grant it. But it will not be presumed that a legislative enactment was duly passed or proved when the contrary appears. So we cannot presume that this ordinance was published in the mode provided by law, when it is manifest from the certificate of the city clerk that the opposite is true." See, also, Union P. R. R. Co. v. Ruzicka, 65 Neb. 621, 91 N. W. 543.

The failure to publish the maps referred to in the resolution was not accidental or because of lack of information. It was purposeful on the part of appellee. One of the publishers of the Bellevue Press, when discussing the publication of the resolution of March 28, 1955, with appellee, suggested that the resolution and the map should be published together. This was declined by appellee because of the cost of such publication. The admonition is here appropriate that a municipality is not obliged to zone but if it attempts to zone it must follow the procedure prescribed by the act bestowing the power to zone. Alabama Alcoholic Beverage Control Board v. City of Birmingham, *supra*. Likewise the requirement of the statute that the whole zoning resolution, the text of it and the map made a part of it, must be published may not be disregarded because the publication seems expensive. W. H. Barber Co. v. City of Minneapolis, *supra.*

Appellee asserts that appellant is estopped from contesting the validity of the zoning resolutions because they have been in effect, enforced, and relied upon for 17 years. There is no reference to the record where any proof appears to support this assertion. There is evidence that appellant has been wrecking automobiles on her real estate continuously since January 1951. Obviously the zoning regulations were not enforced against her for about 6 years. It is not shown that she knew of the alleged zoning regulations until about the time this litigation had its inception. The conclusive answer to the challenge of the right of appellant to assert the invalidity of the alleged zoning regulations is that they were invalid from the time of their origin. Invalid legislation is not law. It confers no rights and imposes no duties or obligations. It is in legal contemplation as inoperative as though it had never been composed or enacted. Jessen v. Blackard, 160 Neb. 557, 71 N. W. 2d 100; Mara v. Norman, 162 Neb. 845, 77 N. W. 2d 569. This contention is without substance.

The judgment should be and it is reversed and the cause is remanded with directions to the district court for Sarpy County to render and enter a judgment of dismissal of this case.

REVERSED AND REMANDED WITH DIRECTIONS.

MESSMORE, J., participating on briefs.