Sylvain Shatz et al.

*v.*

Robert L. Phillips et al.

471 S.W.2d 944

(*Jackson,* April Term, 1971.)

Opinion filed October 4, 1971.

520

ELAM, GLASGOW & TANNER, Union City, for petitioners.

HEATHCOCK & CLOYS, Union City, for respondents.

MR. JUSTICE McCANLESS delivered the opinion of the Court.

Sylvain and Elaine Shatz by their petition for the common law writ of certiorari sought to have declared invalid the action of the Board of Zoning Appeals of the City of Union City upholding the action of the municipal building inspector who, under the authority of Section 11-2003(b) of the Municipal Code, had denied the petitioners the right to use the property of which they were in possession for the assembling, processing, and storage of certain used and waste materials.

The Chancellor filed an opinion in which he found all the facts pertinent to the issues and on which he based his decree dismissing the petition. The petitioners appealed to the Court of Appeals who affirmed the Chancellor. We have granted certiorari.

The facts are not in dispute. The plaintiffs developed some of them by the testimony of witnesses and the parties stipulated the rest.

For the reasons we shall explain we reverse the Court of Appeals.

The petitioners are husband and wife and are partners under the trade name Union City Iron & Metal Company in a salvage business in Union City. They buy, process, and re-sell scrap metal of various kinds. At a location on a lot lying west of the railroad, east of Depot Street, and south of Grove Street, they operate an out of doors junk yard where large piles of scrap iron are processed and stored. Directly across Depot Street and west of it they occupy a building that they lease

from a family owned corporation and inside which they assemble, process, and pack for sale different kinds of non-ferrous scrap, such as aluminum, copper, and brass. There they also store previous to selling them old automobile batteries and radiators. This activity, on the west side of Depot Street, conducted inside the building, is the activity which the building inspector and the Board of Zoning Appeals have forbidden.

The Chancellor, in his memorandum opinion, found:

"The complainant's building is modern, attractive, and other than the sign thereon, a casual passer would not know what business was being carried on in said building. Further, the complainant's operations in said building are free from noise, odor, fumes, and other objectionable features. There is no machinery in said building; there have been no complaints by the neighbors; they create no traffic problem and no fire hazard, * * *"

and

"The present and past use of the property, so far as the Court can see, is no more objectionable than many other permitted uses * * *."

The Court of Appeals in their opinion said:

"All the storing, sorting, grading and packaging of the non-usable metal is done within the building on the property in question. The building is an ordinary masonry building and when viewed from the outside there is no indication what type operation is being carried on within the building. There is no smoke, fumes, noise or other objectionable feature to the operation carried on by the complainants."

The Chancellor and the Court of Appeals, therefore, have concurred in their finding that nothing objectionable results from the conduct in the building of the activities which the building inspector and the board have forbidden.

The applicable sections of the Union City zoning ordinance adopted under the authority of Title 13, Chapter 7 of Tennessee Code Annotated, are Sections 11-2001 to 11-2006, inclusive of the Municipal Code, as follows:

"11-2001. *General.* Within all areas designated M-1, M-2 on the Zoning Map of the City of Union City, Tennessee, the regulations set out in this Chapter shall apply.

"11-2002. *Intent and purpose.* (a) The M-1 and M-2 Districts are designated to provide areas for uses of land and buildings for administration, research, manufacturing, processing, fabrication, assembly, freight handling, storage, and similar operations.

"(b) The regulations governing M-1 and M-2 Districts are designed to: promote stability of industrial development; protect industrial development from uses incompatible and detrimental to industry; protect non-industrial uses in areas adjacent to industrial districts; and to encourage industrial development in order to improve the basic economy of Union City and thus promote the health, safety, convenience, prosperity, and welfare.

"11-2003. *Principal uses and structures permitted.* (a) Any industrial use that will comply with the standards of this Chapter is by virtue of such compliance a permitted use, provided, that the expense of any tests,

engineering reports, etc., required to assure compliance with these standards shall be borne by the person, persons, firm or corporation applying for a building permit and further, that the recipient of the building permit understands that these standards, like all other provisions of this ordinance, are continuing obligations, and that all new industrial uses will be expected to operate in compliance with these standards.

"(b) The storage and/or salvaging of junk and other used material not pertinent to a manufacturing or fabrication use on the premises is permitted only in the M-2 Districts (Heavy Industry) and such storage or salvage operations shall be enclosed by a wall, tight fence, or compact evergreen hedge not less than six (6) feet in height.

"11-2004. *Permitted accessory uses and structures.* Accessory buildings or uses incidental to and customarily associated with any permitted industrial use.

"11-2005. *Special exceptions.* The judgment of the Board of Zoning Appeals shall be guided by a desire to encourage industrial development in order to improve the basic economy of Union City. Such interest will include the promotion of orderly industrial districts containing industries and other uses compatible with each other. Judged against this interest will be considerations of the effect of the industry, or other use, on the environs and the general character of the entire community.

"After public notice and hearing, and appropriate conditions and safeguards, the Board of Zoning Appeals may permit the following uses or similar and no more objectionable uses:

"Any retail use or service permissible in the B-3 District (General Business), provided such use serves, or is directly auxiliary to, the needs of industrial uses or employees thereof.

"11-2006. *Prohibited uses and structures.* (a) Dwelling units, other than those provided in a hotel, motel, or tourist court permitted as a special exception.

"(b) Any other uses and structures not specifically permitted or permissible on appeal or any other use which in the opinion of the Board of Zoning Appeals would be detrimental to the industrial districts and adjacent districts."

The lot which is the subject of this suit, on the west side of Depot Street, is in a district designated on the zoning map as an M-1 (Light Industry) District. According to the terms of the sections of the Municipal Code, copied above any lawful industry may be carried on in an M-2 District (Heavy Industry). With a single exception any lawful industry may be carried on in an M-1 District (Light Industry). The exception is that "The storage and/or salvaging of junk and other used material not pertinent to a manufacturing or fabrication use on the premises" is allowed only in an M-2 District (Heavy Industry).

The ordinance does not define the designations, "M-1 District (Light Industry)" and "M-2 District (Heavy Industry)" and under its language the only difference in what is allowed in them is that no matter how conducted, "the storage and/or salvaging of junk and other used material" is not allowed in an M-1 District (Light Industry). The operation in an M-1 District (Light Industry)

of a wood working plant, a foundry or a slaughter house would meet the restrictions of the ordinance.

█ The question for our determination is: Does Section 11-2003(b) of the Municipal Code of Union City have the effect of being arbitrary and of working an unreasonable discrimination on the use of the petitioners' lot on the west side of Depot Street? We must answer this question in the affirmative making it necessary that we declare the section void insofar as it applies to the uses of the property described in the record.

Our Court through Mr. Justice Tomlinson has said:

"In whatever form presented, ultimately the question for judicial determination is the same, to wit: Does the zoning ordinance in question have any reasonable connection or relation with the protection of public safety, health, morals and natural wellbeing of the people?" *Meador v. City of Nashville,* 188 Tenn. 441, 220 S.W.2d 876 [1948].

Then the Court, again through Mr. Justice Tomlinson, said:

"Equally as well settled is the fact that a zoning ordinance enacted pursuant to such statute is valid, except where that ordinance may be in some respect unreasonable or arbitrary. If there be a discrimination between properties in zoning, such discrimination will not be disturbed if it may be rested upon some reasonable basis, and is not forbidden by the Charter." *Henry v. White,* 194 Tenn. 192, 250 S.W.2d 70 [1952].

Under the facts before us there is discrimination: that is, the petitioners are forbidden to do with their property in an M-1 District (Light Industry) what those

with real estate located in an M-2 District (Heavy Industry) are allowed to do. This discrimination would not of itself be sufficient to justify the Court in deciding that the discrimination is such as to render the application of the ordinance invalid; but nowhere in the record does it appear that the discrimination is a reasonable one —quite the contrary—it clearly appears that the petitioners' use of the property would not be such as to cause any result justifying the exercise of the police power under the municipality's zoning authority.

In *Brooks v. City of Memphis*, 192 Tenn. 371, 241 S.W. 2d 432 [1951], the Court said:

"Where an affected property owner makes an attack upon an amendment to a Zoning Ordinance, and where municipal authority has observed all other requirements of due process, to support a charge that as to him or her, the amendment is arbitrary and confiscatory, the property owner has the burden of showing that the amendment was not adopted in the public interest, but was directed at him or her, to his or her disadvantage and prejudice."

The petitioners assail a section of the ordinance which is not an amendment but which is a part of the ordinance as originally adopted. At the time of its adoption the petitioners were not in possession of their property. Nevertheless, the section in its application to the property is directed to the petitioners, the occupants of the property, "to their disadvantage and prejudice". The requirements of *Brooks v. Memphis,* under the facts as found concurrently by the Chancellor and by the Court of Appeals brings this case within the exception to the general rule of the case quoted above.

To apply the terms of Section 11-2003(b) of the Municipal Code to the property under consideration is to act in an arbitrary manner and to discriminate unreasonably and unlawfully against the petitioners and against their property.

"Restraints upon land use cannot be capricious or unduly discriminatory. There cannot be discrimination between persons or property not reasonably related to the service of an essential public need. *Welch v. Swasey,* 214 U.S. 91, 29 S.Ct. 567, 53 L.Ed. 923 (1909); *Washington National Insurance Co. v. Board of Review,* 1 N.J. 545, 64 A.2d 443 (1949). This is peculiarly so in the exercise of the zoning police power. Constitutional uniformity and equality requires that classification be founded in real and not feigned differences having to do with the purposes for which the classes are formed." *Roselle v. Wright,* 21 N.J. 400, 122 A.2d 506 [1956].

"To be a valid exercise of power, a zoning restriction must have some rational connection with the promotion of public health, safety, morals, or welfare." *Regner v. County of McHenry,* 9 Ill.2d 577, 138 N.E.2d 545 [1956].

In Yokley's "Zoning Law and Practice", 3rd Ed. [1965], at Section 2-16, the author wrote:

"A zoning ordinance cannot unfairly discriminate against a particular parcel of land. If the general scheme of the zoning is sound and valid, nevertheless the courts may properly inquire as to whether the scheme of classification and districting has been applied fairly and impartially in each instance."

In the 1970 supplement to this work this author wrote:

"Stating the matter differently, where the gain to the public is small as compared with the hardship imposed upon the owners of the land by a certain zoning restriction, no valid basis exists for the exercise of the police power."

The defendants contend that the petitioners should be repelled because they knew of the existence of the ordinance and its restrictions when they assumed occupancy of their property. This contention cannot prevail. The petitioners had the right to dispute the validity of Section 11-2003(b) as it applied to their use of the property after they had taken possession of it.

"Purchase of property with knowledge of the restriction does not bar the purchaser from testing the validity of the zoning ordinance since the zoning ordinance in the very nature of things has reference to land rather than to owner (Bassett on Zoning, p. 177). Knowledge of the owner cannot validate an otherwise invalid ordinance." *Vernon Park Realty v. Mt. Vernon.* 307 N.Y. 493, 121 N.E.2d 517 [1954].

We conclude that the application of Section 11-2003(b) of the Municipal Code of the City of Union City discriminates unfairly and unlawfully in its application to the lot occupied by the petitioners located on the west side of Depot Street in Union City and described in this record. We therefore decree that the section is void in its application to the petitioners' uses of the property.

We adjudge the costs against the defendants.

DYER, CHIEF JUSTICE, and CHATTIN and CRESON, JUSTICES, concur.

HUMPHREYS, JUSTICE, concurs in a separate opinion.

MR. JUSTICE HUMPHREYS (concurring).

My Brother McCanless has, I think, written thoroughly and well on this case. However, because it is a case involving zoning in which this Court overrules both the Chancery Court and the Court of Appeals, I am constrained to make some observations of my own.

As I see it, the question presented, stated in its simplest terms, is, whether a municipality, in the exercise of its power to zone, can prescribe an area in which light and heavy industry shall operate, divide the area into two zones, and say to both light and heavy industry that either one or both of you can operate on either or both sides of this dividing line, except that a scrap metal processing industry, or junkyard, which is classified as a heavy industry in the zoning ordinance, must be operated on one particular side of that line. It is evident that the answer must be, that a municipality does not have the power to do this.

Once having said that heavy industry can operate in either or both of the two districts, there is no reason for saying this particular type of heavy industry, which is not obnoxious within itself as a nuisance, which as a subject cannot be dealt with by zoning laws, must be carried on on one particular side of the dividing line. Such a zoning is arbitrary and unreasonable, and discriminates against this particular heavy industry. This, because it singles this industry out for discriminatory treatment, resulting in serious limitation of the owner's land use, with no apparent reason therefor.

I well understand the concern of the municipality to regulate the location of scrap metal processors and junk-

yards, but it cannot, after saying that heavy and light industry, which by definition includes such scrap metal processors and junkyards, may use land in either one or both industrial districts for "administration, research, manufacturing, processing, fabrication, assembling, freight handling, storage and similar operations.", Ordinance sec. 11-2002 by which the municipality intended to permit every character of both heavy and light industrial activity to operate anywhere in either or both districts, pick a particular type of business which is within the ordinance definition of industry, and limit that business to a particular district.

I should also like, in this concurring opinion, to be explicit as to my conception of the constitutional authority of this Court to invalidate the part of the zoning ordinance here dealt with. Every zoning ordinance is an exercise of the police power, inherent in the state, which has first been limited in exercise by the constitution of the state, and has then been delegated by proper statute to the municipality. *Holdredge v. City of Cleveland,* 218 Tenn. 239, 402 S.W.2d 709 (1966) ; *State ex rel. Lightman v. City of Nashville,* 166 Tenn. 191, 60 S.W.2d 161 (1933) ; *Spencer-Sturla Company v. City of Memphis,* 155 Tenn. 70, 290 S.W. 608 (1927).

The limitation on the exercise of this police power is found in our state constitution in Article 1, sec. 8, and Article 11, sec. 8. These two constitutional provisions prohibit classification against individuals as well as in favor of individuals. They admit of the exercise of a wide scope of discretion in classification for police power purposes, but prohibit classification which is arbitrary and without any reasonable basis, as in this case. *Motlow v. State,* 125 Tenn. 547, 145 S.W. 177 (1911) ; *Nance v. O. K.*

*Houck Piano Co.,* 128 Tenn. 1, 155 S.W. 1172 (1913); *Ragio v. State,* 86 Tenn. 272, 6 S.W. 401 (1888); *Stratton Claimants v. Morris Claimants,* 89 Tenn. 497, 15 S.W. 87 (1891); *Southern Ry. Co. v. Memphis,* 126 Tenn. 267, 148 S.W. 662 (1912); *Consumers Gasoline Stations v. Pulaski,* 200 Tenn. 480, 292 S.W.2d 735 (1956); *Livesay v. Tennessee Board of Watchmaking Examiners,* 204 Tenn. 500, 322 S.W.2d 209 (1959).

So, I concur in the reversal of the appellate court, on the ground that the particular provision of the zoning ordinance under consideration is unconstitutional and void as arbitrary and unreasonable classification, in violation of Article 1, sec. 8, and Article 11, sec. 8 of the Constitution of Tennessee.