# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
December 11, 2001 Session

## BOARD OF COMMISSIONERS OF ROANE COUNTY v. JOE PARKER, ET AL.

### Appeal from the Chancery Court for Roane County
### Nos. 13,252 & 13,223    Frank V. Williams, III, Chancellor

### FILED FEBRUARY 13, 2002

### No. E2001-00146-COA-R3-CV

---

The Plaintiffs acquired a nine-acre tract of land zoned A-1, the General Agricultural District, which was the least restrictive zoning district in Roane County, and soon announced their intention to house a tiger thereon, a permissible use, which motivated the County to amend its Regional Zoning Ordinance by creating a new zoning district, A-2, with the permissible use declared to be the keeping thereon of exotic animals. Within three years the Plaintiffs had fifty or more exotic [Class I] animals on their nine-acre tract. They acquired three additional tracts which they requested be rezoned A-2 in order to expand their exotic animal sanctuary. Rezoning was refused and the Plaintiffs filed suit alleging the refusal was arbitrary and capricious; the County filed suit, seeking to enjoin the Plaintiffs from keeping more than one exotic animal - the tiger - on their nine-acre tract. The County prevailed in both actions. The judgment is reversed and the case is remanded for entry of judgment in accordance with this opinion.

### Tenn. R. App. P. 3; Judgment of the Chancery Court Reversed and Remanded

WILLIAM H. INMAN, SR. J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J. and HERSCHEL P. FRANKS, J., joined.

Steven Douglas Drinnon, Dandridge, Tennessee, for the Appellants, Joe Parker, Mary Lynn Parker and Tiger Haven.

Jack H. McPherson, Jr., Kingston, Tennessee, for the Appellee, Board of Commissioners of Roane County, Tennessee.

## OPINION

## I.

This is the second appeal of these consolidated cases. In the first appeal[1] we vacated the judgment which (1) enjoined the Appellants from keeping exotic animals[2] on Parcel 22.06, (about nine acres) and (2) upheld the refusal of the County to rezone adjacent tracts A-2, which would permit the keeping of exotic animals thereon.[3] The dispositive issue on the first appeal was whether the trial court erred in refusing to alter or amend the judgment based on newly discovered evidence that other property had been rezoned A-2. The Chairman of the Roane County Planning Commission testified that no property in Roane County was zoned A-2; after the trial it was discovered that the Chairman mis-spoke, and that certain property, to wit, Parcels 38 and 39, Group B, Map 47, known as the Ladd property, had been rezoned A-2 several years previously.

We held that

> *Information about the circumstances of that A-2 zoning may well be critical to the resolution of many of the issues raised at trial by the Appellants. . . . [W]hether the Board's refusal to grant them A-2 zoning was arbitrary and capricious, whether the A-2 zoning classification is unconstitutionally vague and/or overbroad, and whether the Board's refusal to rezone their property to A-2 unreasonably discriminates. The existence of and circumstances surrounding the zoning of other property as A-2 in Roane County is material to the resolution of those issues.*

We declined to address other issues raised by the Appellants, holding that "all parties will have an opportunity to appeal and raise any issue they believe appropriate . . ." Following remand and after extended colloquy concerning the relevancy of evidence proposed to be presented by the Appellants, the trial judge ruled:

> Counsel, I am going to allow you to do this and only this, and that is if you can show that Mr. Parker and his land and his use was similarly situated to that of Jane Todd's (Ladd) and *that they gave Jane Todd (Ladd) permission to do something that they did not give Mr. Parker and Tiger Haven permission to do then I will hold that to be arbitrary and capricious and strike the ordinance.* That is all. And if you can show what Jane Todd and her property, what is going on out there, is the same or essentially the same or should be considered to be the same as what Mr. Parker wants to do with his land and they permitted one and did not permit the other that is arbitrary and capricious. And that is as far as I am going to go with it. . . . *I think A-2 zone was*

---

[1] *See, **Parker, et al v. Bd. of Commissioners**, 2000WL 134911 (Tenn. Ct. App. 2000).*

[2] Other than one tiger.

[3] Tracts 29.01, 11 & 12.

*created because they realized that Mr. Parker had a pet tiger out there and that if he could bring one then he might bring some others and that to avoid that situation they created the A-2 zone.*

In accordance with these comments a pre-trial order was entered which "limited the introduction of evidence to the facts and circumstances related to the zoning of other A-2 property."

The Chancellor observed that "his task was to determine what effect 'these facts' have on the issues as outlined by the Court of Appeals."

The principal witness at the hearing on remand was Ms. Jane Ladd Petruzzi who testified that she made application, in 1992, to have property owned by her father rezoned A-2 to enable her to (1) board small pets including small exotic animals, (2) use the property as a quarantine for the Knoxville Zoo, and (3) perhaps "big cats." The rezoning request was approved in May 1992. The Ladd property remains as rezoned, that is, A-2. Whether it was encircled with quansitina [sic: concertina] razor wire, as proposed, does not appear.

The rezoning request was approved in May 1992. Ms. Ladd's plans never came to fruition owing to the death of her father, but her property remains zoned A-2.

Reiterating his earlier comments, the Chancellor held that:

> The issue presented to the Chancery Court on remand is straight forward. *The County would be acting arbitrarily or capriciously if it agreed to rezone property upon the petition of someone who was similarly situated to the petitioners, but denied the petitioner's request to rezone their property for the same or similar uses.* (Emphasis added). The question becomes: Is the use proposed by Jane Todd Petruzzi and approved by the County Commission the same or sufficiently similar to the use being made of the petitioners' land so to render arbitrary or capricious the County's refusal to rezone the petitioners' property? The court finds that the use made of petitioners' land is significantly different from that proposed by Jane Ladd Petruzzi and that the County did not act arbitrarily or capriciously by denying petitioners' request while approving the request of Ms. Petruzzi.
>
> Both uses are governed by the provisions of the ordinance which is reasonably specific about the types of uses which are intended to be regulated. The amended ordinance provides:
>
> > 1103.2.3 <u>Permitted uses and structures.</u>
> > a. Animal shelters, preserves, reservations, kennels, livestock pens or yards and other places and uses

intended for the keeping of wild, exotic, and other animals in a restrained or restricted space because of a potential threat to public health and safety.

The Chancellor then found that short term boarding of dogs, cats and "small exotics" while prohibiting lifetime housing of lions and tigers was not arbitrary "because such uses are not similar even though both are regulated by the same ordinance." We note that this finding ignores much of Ms. Ladd's testimony.

The plaintiffs were enjoined from housing exotic animals on Parcels 22.06 and 29.01 [except the pet tiger] and the action of the County in refusing to rezone the adjacent tract was held not to have been arbitrary. The plaintiffs appeal.

## II.

Because the issues presented for review to an extent are overlapping and repetitive we will discuss them collectively. *See, **Hutcherson v. Criner***, 11 S.W.3d at 131, (Tenn. Ct. App. 1999). Review is *de novo* on the record with a presumption of the correctness of any factual determination unless the evidence otherwise preponderates. ***Campbell v. Florida Steel Corp.***, 919 S.W.2d 26 (Tenn. 1996). The standard of review respecting the issuance of injunctive relief is whether the Chancellor erred in exercising his discretion to do so.

The principal dispositive issue is whether the defendant's refusal to rezone the plaintiffs' property was arbitrary, capricious and discriminatory.

Secondary issues are (1) whether the amendment to the Zoning Ordinance affected the uses of A-1 property, (2) the validity of the Amendment to the Regional Zoning Ordinance, (3) the admissibility of evidence, and (4) equitable estoppel.

## III.

Ms. Parker purchased a nine-acre tract, identified as Parcel 22.06, on May 24, 1991. It was zoned A-1, the least restrictive of the zoning districts. She later acquired three adjoining tracts, also zoned A-1

A few months after acquiring the nine-acre tract, the Parkers informed the County that they intended to house a tiger thereon, a use permitted under the General Agricultural Classification. This precipitated the adoption of a Resolution, No. 91-09-02, on November 19, 1991, amending the Regional Zoning Ordinance. The amendment provided:

> Section 1.  Title II, Roane County Zoning Regulations is hereby amended by inserting a new section, 1103.2, creating a new district to be referenced as A-2, Special Agricultural District.

Section 2.    The specifics of the district as follows:

1103.2   A-2.  Special Agricultural District.  This district is intended for application to rural areas intended for special agricultural uses and uses that are specifically or generally similar to agricultural uses that are or generally perceived to be a threat to the social and economic health, safety, and welfare of the county and its citizens.

1103.2.1   District determination criteria.  The following criteria are provided as a guide for determining the appropriateness of an A-2 designation.

a.  The initial district should encompass no less than one acre of land but may be increased in size in increments of less than one acre.

b.  The district should be adjacent to either General Agricultural or industrially zoned properties and at least a mile from residentially zoned properties or any properties used for residential purposes that has a density of four (4) dwellings per acre.

1103.2.2   Lot size and structure heights.

a.  No district shall contain less than one (1) acre of land.

b.  All structures exceeding 48 feet shall be approved by the Board of Zoning Appeals.

1103.2.3   Permitted uses and structures.

a.  Animal shelters, preserves, reservations, kennels, livestock pens, or yards and other places and uses intended for the keeping of wild, exotic, and other animals in a restrained or restricted space because of a potential threat to public health and safety.

b.  Single family residential uses where such use is required as an accessory use to the keeping of animals.

1103.2.4   Special exception.

a. Any agricultural or related use not specified above, that is determined by the planning commission to be a threat to the public health and safety or the economic security of the county.

Section 1103.2 is not readily clear, but we deduce that a new zoning district described as "A-2 Special Agricultural District" was created for *special agricultural* uses in *rural areas* similar to *agricultural uses* which are perceived to be a threat to the health, safety, and welfare of the citizens of the county. (Emphasis supplied).

The keeping of Class I exotic animal in the A-1 zoning district was a non-conforming use permitted pursuant to Tenn. Code Ann. § 13-7-208 which provides:

(b) In the event that a zoning change occurs in any land area where such land area was not previously covered by any zoning restrictions of any governmental agency of this state or its political subdivisions, or where such land area is covered by zoning restrictions of a governmental agency of this state or its political subdivisions, and such zoning restrictions differ from zoning restrictions imposed after the zoning change, then any industrial, commercial or business establishment in operation, permitted to operate under zoning regulations or exceptions thereto prior to the zoning change shall be allowed to continue in operation and be permitted; provided, that no change in the use of the land is undertaken by such industry or business.

(c) Industrial, commercial or other business establishments in operation and permitted to operate under zoning regulations or exceptions thereto in effect immediately preceding a change in zoning shall be allowed to expand operations and construct additional facilities which involve an actual continuance and expansion of the activities of the industry or business which were permitted and being conducted prior to the change in zoning; provided, that there is a reasonable amount of space for such expansion on the property owned by such industry or business situated within the area which is affected by the change in zoning, so as to avoid nuisances to adjoining landowners. No building permit or like permission for construction or landscaping shall be denied to an industry or business seeking to expand and continue activities conducted by that industry or business which were permitted prior to the change in zoning; provided, that there is a reasonable amount of space for such expansion on the property owned by such industry or business situated within the area which is affected by the change in zoning, so as to avoid nuisances to adjoining landowners.

**IV.**
**Analysis**

We first consider the argument of the Appellants that relevant and material evidence was excluded on remand in direct contravention of our initial opinion. Specifically, the Appellants say that the pre-trial order excluded:

> Evidence of any activity by the Roane County Planning Commission or the Roane County Commission to refine the zoning ordinance.

> Evidence of personal recollections of any commissioner or board member as an attempt to speak for all commissioners.

> Evidence of the method which Kay Christopher (present zoning office) would use to approach the situation of zoning the Ladd-Petruzzi property.

> Evidence of the purpose and creation of the zoning ordinance or its amendments

.

> Evidence of the issue of vagueness of the zoning ordinance or its amendments.

The Chancellor reasoned that the case was remanded for a specific purpose, to-wit: to conduct a hearing on the issue of whether the County had rezoned other properties A-2 in a discretionary manner, as contrasted to a reversal and remand for a new trial. He accordingly declined to allow the Plaintiffs to "try their cases anew" by the introduction of evidence that did not pertain to the issue of other A-2 zoned properties. Tenn. Code Ann. § 27-3-128 is the statutory authority for a remand, but it does not authorize courts to encourage protracted litigation by allowing piecemeal production of evidence. *See, **Killian v. Campbell***, 760 S.W.2d 218 (Tenn. Ct. App. 1988). We find that the Chancellor correctly limited the evidence on remand for the stated purpose.

## V.

The Appellants next claim that the refusal of the County to rezone parcels 29.01, 12 & 16 was "an unreasonable discrimination against their property," relying on ***Shatz v. Phillips***, 471 S.W.2d 944 (Tenn. 1971). In ***Shatz***, a municipal building inspector denied Plaintiffs' right to use their property for assembly, processing and storage of used and waste material. The zoning ordinance provided that the described activity was allowed on "M-2" zoned property, but not allowed on "M-1" zoned property. The zoning ordinance did not define these designations, and the only difference in what was allowed in them and on them was no matter how conducted, "the storage and/or salvage of junk and other used material" was not allowed on M-1 zoned property. The ***Shatz*** Court found that this discrimination was unreasonable, directed at the Plaintiffs to their disadvantage, and based solely on the activity allowed on the property.

The amendment to the zoning ordinance created, as we have noted, a new zoning district, A-2, intended for *application in rural areas*. (Emphasis supplied).

Ms. Ladd's property was designated as residential since it is located in the Roane Hills Subdivision, which adjoins yet another Subdivision. This appears to be in conflict with the

requirement that the A-2 zoning is applicable only to rural areas. While the point is not crucial, it is significant because of its relevancy to the issue of whether the County's refusal to rezone Appellants' property was arbitrary. Ms. Ladd's property was rezoned A-2, *which clearly permits the keeping of large exotic animals*. The Appellee's argument that the Ladd property may only be used for dog kennels, and the like, allegedly in accordance with her testimony, cannot prevail, for at least two reasons: (1) She testified that she might also use the property as a quarantine for the Knoxville Zoo, and might keep large cats on the property, and (2) her statements, for the purposes of these cases, are largely irrelevant. We are here concerned with an interpretation of zoning ordinances and their content, as contrasted to the reason and manner of their enactment. District A-2 permits the keeping of Class I animals; as drafted and enacted, it cannot be limited, *by the County*, to a different Class of animals such as dogs and cats.

Moreover, the Appellants' property undisputably qualifies for the A-2 designation. It is admittedly rural, as that word is commonly used, in contrast to the Ladd property. As a factual matter the Appellants' property is more qualified for the A-2 classification than is the Ladd property.

The discrimination is patent, but "if it may be rested upon some reasonable basis, it is not forbidden . . ." **Henry v. White**, 250 S.W.2d 70 (Tenn. 1952). We see no reasonable basis for the obvious discriminatory action of the County in rezoning the likely-unqualified property of Ms. Ladd, while refusing to rezone the clearly qualified property of the Appellants. As stated in **Shatz**, *supra*, "restraints upon land use cannot be capricious or unduly discriminatory," and, quoting from Yokley's Zoning Law and Practice, "a zoning ordinance cannot unfairly discriminate against a particular parcel of land."

In **Shatz**, quoting **Brooks v. City of Memphis**, 241 S.W.2d 432 (Tenn. 1951), the Supreme Court held:

> Where an affected property owner makes an attack upon an amendment to a Zoning Ordinance, and where municipal authority has observed all other requirements of due process, to support a charge that as to him or her, the amendment is arbitrary and confiscatory, the property owner has the burden of showing that the amendment was not adopted in the public interest, but was directed at him or her, to his or her disadvantage or prejudice.

We think the Appellants carried the burden of proof that the refusal of the County to rezone their property was arbitrary and capricious, was not fairly debatable, and was directed to the Appellants to their disadvantage. While it cannot reasonably be said that the amendment was not adopted in the public interest, since we are concerned with dangerous - or, at least, once dangerous animals - the totality of the circumstances indicates that the amendment was primarily directed to the Plaintiffs. The rezoning of the Ladd property - and its zonal continuation - is stark evidence of the fact. The County argues that it did not discriminate against the Appellants because their "business and operation" did not exist at the time the A-2 zoning amendment was adopted, since they had only one tiger on Parcel 22.05. It is conceded that the A-2 zoning classification was

provoked by the Plaintiffs' possession of the tiger; the County argues that A-2 zoning was necessary to protect the public, and not to specifically disadvantage the Plaintiffs. This argument loses its significance when arrayed against the fact that shortly after the A-2 Amendment was adopted the County rezoned the Ladd property to an A-2 classification which, as we have seen, clearly permitted the keeping of Class I animals. The County rationalizes its action respecting the rezoning of the Ladd property by insisting that its Commissioners "considered the impact upon the community, enquired regarding safety and other quality of life issues" and granted the rezoning request. The County further argues that the use of the two properties [the Ladd property and the Plaintiffs' property] was completely different because Ms. Ladd intended to board "dogs, cats and small exotics" short-term, as contrasted with long-term housing of big cats by the Plaintiffs. We have heretofore discussed Ms. Ladd's testimony and its irrelevancy; her property was rezoned A-2, for whatever reason, and, of course, may be used accordingly.

## VI.

Appellants next argue that the A-1 classification permits them to use Parcel 22.06 as they intend because the A-2 Regulations do not apply to Parcel 22.06. Parcel 22.06, as we have repeatedly shown, is zoned A-1, the General Agricultural District, and as stated, is the least restrictive of all the 14 districts. The officials of the Planning Commission and the Board of Commissioners of the County conceded that the mere creation of a new zoning district [A-2] *did not abrogate the uses allowed on A-1 property.* (Emphasis supplied).

When the Plaintiffs brought their pet tiger to Parcel 22.06, the County was galvanized to adopt a Resolution creating another District, A-2, a Special Agricultural District, "intended for application to rural areas . . . for special agricultural areas that are . . . similar to agricultural uses . . . generally perceived to be a threat to the social and economic, health, safety and welfare of the County and its citizens."

But the question remains: Did the adoption of the A-2 Resolution change the permitted uses of A-1 property? The County officials essentially conceded that it did not. We agree. ***Hutcherson v. Criner***, 11 S.W.3d 126 (Tenn. Ct. App. 1999) is instructive on the point. We held that the enactment of a zoning amendment creating two new districts within a zoning classification did not remove landfills as a permitted use within another district. Moreover, the A-2 Resolution did not prohibit activity on A-1 property which was previously legal. *See, **Rives v. City of Clarksville***, 618 S.W.2d 502 (Tenn. Ct. App. 1981)

## VII.

We turn now to the insistence of the Appellants that the Amendment to the Regional Zoning ordinance is invalid because of its vagueness and overbreadth.

As we ruled in ***Hutcherson***, *supra*, "the right of a county to enact or amend zoning regulations is based upon powers delegated to it by the state legislature by specific enabling acts. ***State ex rel. Browning-Farris Indus. v. Board of Comm'rs***, 806 S.W.2d 181, 187 (Tenn. Ct. App.

1990) (citing *Henry v. White*, 194 Tenn. 192, 250, S.W.2d 70 (1952); *State ex rel. Lightman v. City of Nashville*, 166 Tenn. 191, 60 S.W.2d 161 (1933)). There is a presumption in favor of the validity of an ordinance and those questioning its validity have the burden of proof. *Town of Surgoinsville v. Sandidge*, 866 S.W.2d 553, 555 (Tenn. Ct. App. 1993) (citing *Balsinger v. Town of Madisonville*, 222 Tenn. 272, 435 S.W.2d 803, 805 (Tenn. 1968)."

It is well settled that ordinances and statutes are vague and violate due process if their prohibitions are not clearly defined. *H & L Messenger, Inc. v. City of Brentwood*, 577 S.W.2d 444, 453 (Tenn. 1979). If the ordinance is so vague that [persons] of common intelligence must necessarily guess at its meaning, it cannot pass constitutional scrutiny. *Davis Kidd Bookseller Inc. v. McWherter*, 866 S.W.2d 520 (Tenn. 1993).

Section 1103.2. of the Ordinance has already been exegeted. Without paraphrasing, it is incomprehensible; with paraphrasing, the legislative intent adequately appears. The remainder of the Ordinance is not beyond the ability of persons of ordinary intelligence to grasp without recourse to speculation. We accordingly find that the Amendment of the Regional Zoning Ordinance is not invalid for reasons of vagueness or overbreadth.

## VIII.

Finally, it is pertinent to note that this litigation is concerned only with the zoning of Appellants' property. The keeping of Class I [exotic] animals thereon is controlled by a rigid statutory scheme, Tenn. Code Ann. § 70-4-403, *et seq*., which onerates the Tennessee Wildlife Resources Agency with the duty of permitting and overseeing the keeping and maintaining of Class I wildlife. Doubtless in part because of this litigation, that Agency has carefully scrutinized the Appellants' operation, and the facility on Parcel 22.06 meets or exceeds the requirements for cage and perimeter security. A determination of the number of Class I animals which may be housed on specific property is likewise within the prerogative and responsibility of the Tennessee Wildlife Resources Agency.

We conclude that a discussion of the remaining issues would not be productive of any worthwhile result.

In sum, we hold that (1) the refusal of the County to rezone the property of the Plaintiffs from A-1 to A-2 was arbitrary and capricious, (2) the enactment of the amendment to the Regional Zoning Ordinance is valid, (3) the Amendment did not abrogate the permitted uses of Property Zoned A-1, and (4) the injunction is dissolved. Costs are assessed to the Appellee.

_____
WILLIAM H. INMAN, SENIOR JUDGE